**R. King BURTON, Appellant,**

v.

**Earl KING, Jr. et al., Appellees.**

**No. 489.**

Court of Civil Appeals of Texas, Tyler.

Oct. 15, 1970.

Rehearings Denied Nov. 19, 1970.

H. M. Harrington, Jr., Longview, for appellant.

Payne, Pace & Benners, Dallas, Smead, Roberts, Harbour, Smith, Harris, French & Parker, Earl Roberts, Longview, for appellees.

MOORE, Justice.

This is an action for a declaratory judgment and construction of a trust provision in the holographic will of R. E. King, deceased, relating to certain oil property situated in Gregg County, Texas.

The record shows that R. E. King, the testator, was a practicing attorney in Memphis, Tennessee, until his death on May 21, 1948. The holographic will dated November 14, 1946, together with several codicils, was duly probated in the State of Tennessee. The estate of the decedent was made up of two distinct and separate parts, consisting of various properties in the State of Tennessee and certain oil properties situated in Gregg County, Texas. Insofar as the Tennessee properties are concerned, the estate was terminated in 1951 when an order was entered approving the distribution thereof. The dispute here arises with respect to the construction of the will and codicils devising the oil property situated in Gregg County.

The provisions of the will, together with the codicil in question submitted for construction are as follows:

"3

"I direct that my executors and trustees continue the operation as at present,

of the Oil Wells in Gregg County, Texas as long as in their judgment it is advisable to do so, but in no event shall they sell, encumber or dispose of such property or any part thereof, including oil royalties, so long as they produce in the aggregate $500.00 per month net, and divide the income equally between my brother Dr. T. Benton King, Earl King, Sr., R. King Burton and Mrs. Miles Bradford of Birmingham, Alabama. But that portion going to Dr. T. Benton King shall be collected by my Executors & Trustees and paid to him quarterly, semiannually or annually as he wishes and directs.

"If my brother Earl King Sr. shall die during the pendency of this trust his interest under this section shall go share & share alike to his son Earl King Jr. and daughter Gere King, but not to be paid them until they reach the age of 27 years. This refers not to income but corpus of the estate.

"If R. King Burton should die during the pendency of this trust his share shall go to Earl King Sr. & Dr. T. Benton King equally but payment to Dr. T. Benton King shall be made only as provided above.

"In the event of the death of Mrs. Miles Bradford during the pendency of this trust her share shall go to Dr. T. Benton King, Earl King Sr & R. King Burton, equally, but payment to Dr. T. Benton King is to be made only as provided above.

"If Dr. T. Benton King should die during the pendency of this trust his interest shall go to Earl King Sr & R. King Burton equally, that is share & share alike.

\*     \*     \*     \*     \*     \*

"9

"All the rest and residue of my estate, not hereinbefore or hereinafter disposed of I bequeath to Dr. T. Benton King, Earl King Sr & R. King Burton, share & share alike.

\*     \*     \*     \*     \*     \*

"At Home Feby 7–48

"My will is in my desk at office. Since Earl has died I hereby make these changes in will.

"I desire that Zula King and her children receive that portion of my estate under these conditions: Zula is to receive 500 per month as long as she remains alive and unmarried and the rest of the income from the fund shall be paid to Gere & Earl Jr as the Executors & Trustees shall deem wise. This fund shall be kept intact as long as Zula lives and at her death shall go absolutely to Gere & Earl Jr. But in no event shall the corpus of this fund come into the children's possession until they have become 30 years of age. \* \* \*"

The testator, R. E. King, was never married. The devisees under the will were related to the testator in the following manner: Dr. T. Benton King, brother; Mrs. Miles Bradford, sister; R. King Burton, nephew; and Earl King, Sr., a brother who died prior to the codicil dated February 7, 1948, and who was survived by a son, Earl King, Jr., and a daughter, Gere King O'Brien, and a widow, Zula King.

Prior to trial, the parties entered into a stipulation of facts, the substance of which is as follows: (1) that the will and codicils thereto had been duly offered for probate in the Probate Court of Gregg County Texas, (2) that R. King Burton, one of the executors and trustees under the will, was duly appointed as executor of the estate by the Probate Court in Gregg County, Texas, for the purpose of carrying into effect the provisions of the will and codicils insofar as they affected the leasehold estate in oil and gas royalty and mineral interest in the oil property situated in Gregg County (Dr. T. Benton King, the other executor-trustee waived appointment in Texas), (3) that by an order of the Probate Court of Gregg

County, Texas, R. King Burton was authorized to disburse the net income derived from the Texas oil properties under the provisions of the will and codicil thereto, (4) that the net royalty income from the Texas oil properties has continuously since 1948 to the date of the filing of suit aggregated the sum of approximately $1,900 per month, (5) that R. King Burton disbursed the funds received from the oil properties under the provisions of paragraph 3 of the will, and the codicil dated February 7, 1948, (6) that as of the date of the filing of this suit all devisees under the will and codicil dated February 7, 1948, had died except R. King Burton, Earl King, Jr., and Gere King O'Brien, and Zula King, (7) that Zula King remarried on June 24, 1959, and on such date she was no longer eligible to participate in the income from the oil properties and payment was stopped, (8) that the parties are in agreement as to how the net proceeds of the Gregg County oil property shall be paid, 50% to R. King Burton, 25% to Earl King, Jr., and 25% to Gere King O'Brien during the existence of the trust established by the will of R. E. King, (9) that Earl King, Jr. and Gere King O'Brien are now both above the age of 30 years, and finally (10) that the parties agree and stipulate that the sole issue in controversy is: "Who are the ultimate fee owners of the remainder under the will of the testator R. E. King, deceased, of the Gregg County Oil properties."

The controversy arose in this manner: On December 9, 1968, R. King Burton, individually and as executor of the estate of R. E. King, deceased, filed his final accounting in the Probate Court of Gregg County, and in connection with the final accounting also filed his application to terminate and close the estate with respect to the Texas oil properties. In his application to terminate and close the estate, he took the position that under the terms and provisions of the testamentary trust created by the codicil of February 7, 1948, he was vested with the discretionary power to terminate the trust at any time he found it advisable to do so; that after the death of Dr. T. Benton King, he says that he found it advisable to bring the trust to an end. His prayer was for a distribution of the oil properties under the residuary clause of the will as follows: 1/3rd to R. King Burton, 1/3rd to Earl King and Gere King O'Brien, and 1/3rd to the beneficiaries under the will of Dr. T. Benton King. In reply thereto, Earl King, Jr. and Gere King O'Brien filed a plea in abatement seeking to abate the proceeding pending a final hearing upon the construction of the will and the codicils thereto in the District Court of Gregg County. The Probate Court entered an order continuing the proceeding pending litigation for construction of the will. The present suit seeking a construction of the will and the codicil was filed in the District Court of Gregg County. Following a nonjury trial, the court decreed that the testator, R. E. King, in paragraph 3 of his will, created a testamentary trust; that the subject matter of such trust was a succession of life estates in the Gregg County oil properties. The trial court further decreed that the trust was to continue until the death of the survivor of R. King Burton, Earl King, Jr., and Gere King O'Brien, and upon the death of the survivor of these, the fee simple title to the Gregg County oil properties would vest in the persons entitled thereto under the residuary clause of the testator's will or their successors in interest. From this judgment, both sides of the controversy have perfected their appeal. Since R. King Burton perfected his appeal first, he will hereinafter be referred to as appellant, and cross-appellants, Earl King, Jr., and Gere King O'Brien, will be referred to as appellees.

As stated, the parties have stipulated that "the sole issue in controversy is as to who are the ultimate fee owners of the remainder under the will of R. E. King" of the Gregg County oil properties.

Appellant argues that the language used by testator shows that he intended to bequeath terminable fee of an undivided 1/4th interest in the Texas property to each of the

four original devisees, terminable in the event of death during the existence of the trust, with a gift over upon death. Thus, he says that since the testator provided for gifts over to him and appellees upon the death of Dr. T. Benton King and Mrs. Miles Bradford and substituted appellees as devisees in place of their father, Earl, Sr., the fee descended ½ to him and ½ to appellees, subject to the trust. Therefore he says that when he elected to terminate the trust he had the right to distribute the corpus, ½ to himself and the other half to appellees. In the alternative, he says that the testator intended to bequeath life estates to all devisees subject to the trust, and that upon his election to terminate the trust, the corpus of the property became subject to distribution under the residuary clause with ⅓rd going to him, ⅓rd to the appellees, and ⅓rd to the legal representatives of Dr. T. Benton King, deceased.

Appellees, on the other hand argue that equitable title was vested by the will of R. E. King in a succession of life estates to beneficiaries, Mrs. Miles Bradford, Dr. T. Benton King, and R. King Burton with remainder in fee to Earl King, Jr. and Gere King O'Brien. In the alternative, appellees argue that equitable title was vested in estates fee simple determinable in Mrs. Miles Bradford, Dr. T. Benton King and R. King Burton; and that such fee determinable was conditioned that if said parties died during the pendency of the trust, the remainder would pass in fee simple absolute to Earl King, Jr. and Gere King O'Brien, share and share alike.

A reading of the will shows that the testator, even though an attorney, expressed himself in somewhat doubtful and ambiguous language, especially with respect to the extent of the estate bequeathed in the Texas oil properties.

■ In the construction of wills it is the duty of the court to pursue the intent of the testator by invoking the rules of construction designed to assist in determining his intent. To this end resort may be made to the provisions of the will as a whole and the surrounding circumstances, rather than a particular isolated provision, if the intention be not clearly expressed. Haile et al. v. Holtzclaw, 414 S.W.2d 916 (Tex.Sup., 1967); Guilliams v. Koonsman et al, 154 Tex. 401, 279 S.W.2d 579, 57 A.L.R.2d 97 (1955).

■ We recognize the rule that where a will contains a provision that upon a certain contingency an estate given to one shall pass to another, the law favors the first taker, and the testator's language is construed so as to grant such taker the greatest estate which by fair construction, it is capable of passing. 61 Tex.Jur.2d, sec. 134, p. 255.

■ But, as has been often observed, a will to be construed is rarely in exactly the same language as another will construed in any reported case, but usually is a thing unto itself. Accordingly, when construction is necessary the court will not adhere rigidly to precedent nor will it arbitrarily follow any rule save that which commands it to ascertain and effectuate the testamentary intent; while other rules are observed so far as practical, they are not absolute or controlling. After all, it has been said, each case must depend upon the ascertainment of the intent of the testator as manifested by the language of the will. 61 Tex.Jur.2d, sec. 153, p. 278.

Appellant admits that the provisions of paragraph 3 fails to specifically set forth whether testator intended a gift of a fee estate or whether he intended to bequeath some lesser estate. He contends, however, that the will contains two indications that the testator intended a gift of the fee.

First he contends that the trust provisions indicating that the trustee had a right to sell the property if the income should fall below $500.00 per month shows an intent to pass the fee to the devisees. He argues that the right to sell the property and deliver the proceeds to the beneficiaries could only exist in a devise of a fee

estate. Thus, he reasons that the grant of such right is indicative of an intent on the part of the testator to create a determinable fee conditioned on the devisees living until the trust was terminated. Therefore, he says that since all other devisees died during the pendency of the trust, he and appellees became the fee owners and upon his election to terminate the trust the corpus became subject to distribution. As we view the language used by the testator, the will is not subject to that interpretation.

It has been said that "The main scheme or plan of the testator is always regarded as a safe criterion in arriving at his purpose." Johnson v. Goldstein, 215 S.W. 840, 841 (Tex.Com.App., adopted 1919).

■ It appears to us that the main scheme or plan of the testator was to provide his nearest of kin with income for life and in order to carry out such plan he placed title in his trustees. The fact that he authorized his executors-trustees to sell the oil properties under certain conditions does not, in our opinion, indicate that he intended a gift of the corpus to the devisees. On the contrary, the creation of the trust, together with granting the trustees the right to sell the corpus under certain conditions, would seem to indicate that he did not intend to make a gift in fee to the devisees. It is also significant, we think, that no provision was made for a distribution of the corpus in the event the income fell below $500.00 and the trustee elected to terminate the trust. In addition to this, we think the testator used other language by which he made it clear that he was limiting his gift to "income" only, rather than a gift of the fee, first by instructing his trustees that they were to continue the operation of the oil wells as at present and distribute the "income", and secondly, by specifically directing in two instances that the "income" payable to Dr. King was to be paid to him at such times of the year as he might direct.

■ We recognize the rule that where there is an absolute gift of all income from the corpus or body of the estate, it may be presumed that the testator intended that the legatees take the corpus. This rule, however, is not a rule of law but is only an aid in discovering the testator's true intent. Anderson v. Menefee, 174 S.W. 904, 908 (Tex.Civ.App., 1915); Haile v. Holtzclaw, supra. The rule will give way for example, when a gift over follows the bequest—the implication in that instance being that there was an intention to create a life estate. Haile v. Holtzclaw, supra. Since testator provided for a gift over upon the death of the four original devisees, it must be presumed that he intended a gift of a life estate and not the fee.

■ Secondly, appellant urges that the following language used by the testator in paragraph 3 shows an intent to make a gift of the fee, to-wit:

"If my brother Earl King Sr. shall die during the pendency of this trust his interest under this section shall go share & share alike to his son, Earl King Jr. and daughter Gere King, but not to be paid them until they reach the age of 27 years. *This refers not to income but corpus of the estate.*" (Emphasis supplied.)

Appellant takes the position that the foregoing reference to the corpus shows a definite intent on the part of the testator to give a ¼th interest in the fee to Earl, Jr. and Gere in the event of the death of their father upon their having reached the age of twenty-seven years. Therefore, he says that since the gift over to Earl, Jr. and Gere was in fee, the original gift to Earl, Sr. must have likewise been a gift in fee. Hence he reasons that since there was a gift in fee to Earl, Sr., there was likewise a gift in fee to the other three devisees terminable on their death during the pendency of the trust. While the reference to the corpus may be sufficient to cast some doubt on the testator's intent, we do not believe appellant's interpretation thereof necessarily follows. In the first place Earl, Sr.'s gift was specifically limited to income.

If this be true the gift over to Earl, Jr. and Gere could amount to nothing more than a gift of income. Secondly, the reference made by the testator to "the corpus of the estate" cannot be construed as a gift of the corpus, but appears only to be a limitation upon the authority of the trustees. In other words testator seems to say that should the trust be terminated, either upon the condition set by him in the trust, or for other reasons, the corpus was not to be distributed to Earl, Jr. and Gere until they reached the age of twenty-seven years.

For the reasons stated we have concluded that appellant's points of error must be overruled.

■ We turn now to appellees' cross point contending that the will, when construed together with the codicil of February 7, 1948, shows that the testator intended to make a gift over to them of the entire fee in the event of the death of all other devisees during the pendency of the trust. In this connection, they urge that since the testator provided for a succession of life estates and failed to make a gift over upon the death of either of them, and further directed in both the will and codicil that the "corpus" was not to be delivered to them until they attained a certain age, it can be implied that he intended for them to ultimately become the fee owners of the Texas property upon the termination of the trust. A review of the various provisions of the will, together with the codicil, convinces us that this conclusion cannot be sustained for two reasons. First, irrespective of whatever might have been testator's intent in making a gift over to them of their father's share under the original will, the codicil of February 7, 1948, supersedes that bequest with respect to the Texas properties and is therefore of no value in determining his intent. Secondly, the language used by testator in the codicil wherein he makes a gift over "absolutely" to appellees has reference only to a gift from a specific "fund" and cannot be construed as a gift over "absolutely" of the Texas property.

A review of the codicil convinces us that it was the purpose and intent of testator to bestow upon appellees that share of his estate which he had theretofore given their father, Earl, Sr. In the first sentence he recites that since Earl had died, it was his desire that Zula and her children (appellees) receive *that* portion of his estate. It seems clear, therefore, that he intended to substitute the widow, Zula, and her two children, Earl, Jr. and Gere, as devisees in place of Earl, Sr. In so doing, however, he limited the gift to Zula to a monthly income of $500.00 a month until her death or remarriage. Thus, with the exception of Zula's monthly income which he carved out of Earl, Sr.'s share, testator apparently intended for appellees to take all of Earl, Sr.'s share including the income from the Texas oil property. Thus appellees argue that the intent to give appellees a fee "absolutely" to the Texas property subject to the trust may be inferred because testator provided they were not to receive the corpus until they attained a certain age. As we construe the codicil, however, the gift over of the corpus bears no relationship to the Texas property. A review of the codicil shows that the $500.00 monthly income bequeathed Zula was to be paid out of "the fund", with any excess in the income from "the fund" to go to Earl, Jr. and Gere, and upon the death of Zula was to go "absolutely" to Earl, Jr. and Gere. In view of the fact that testator directed that the monthly income be paid from "the fund", it seems that he must have intended it to be paid out of some accumulated fund that was available at that time. Otherwise, his bequest would have been meaningless. A review of the will shows that a "fund" was created in paragraph 1 of the will and funds were available to pay the monthly income. Under the first paragraph of the will testator provided that all dividends and interest from his stocks and bonds were to be collected by his executors and disbursed to devisees including Earl King, Sr. It thus appears that the gift over to Earl, Jr. and Gere, as provided in the codicil, was directly tied to a gift over of "the fund".

Consequently when the testator provided that in no event was Earl, Jr. and Gere to receive the corpus of "this fund" until they attained the age of thirty, it becomes apparent that he had reference to the corpus of a specific fund rather than the Texas oil properties. Since the gift over of the "corpus" amounted to nothing more than a gift over of a specific fund containing money, we do not believe it can be construed as a gift over of the corpus of the Texas property, nor do we believe that the testator's failure to make a gift over upon the death of appellees indicates that the testator intended for them to become the ultimate fee owners of the Texas property upon the termination of the trust. Nowhere in the codicil is any specific reference made to the Texas property. Thus we conclude, as the trial court did, that there is nothing, either in the will or the codicil, indicating a testamentary intent to dispose of a fee interest in the Texas oil property and that none of the devisees received anything more than a life estate burdened with a testamentary trust. It follows therefore that if testator did not dispose of the fee it continued in his estate, subject to the trust and upon the termination thereof, whether by death or otherwise, title to the remainder in fee will ultimately vest in the persons entitled thereto under the residuary clause. The residuary clause is to be found in paragraph 9 of the will and provides that the residue of testator's estate, not disposed by him, shall pass to R. King Burton, Earl King, Sr. and Dr. T. Benton King. Therefore, subject to the existence of the trust, the fee interest of the Texas properties will ultimately vest in R. King Burton; Earl King, Jr. and Gere King O'Brien (substituted by testator in place of Earl King, Sr.), and the legal representatives of the estate of Dr. T. Benton King, deceased, or their heirs, legal representatives or successors in interest, respectively.

In view of the stipulation that the property has at all times produced a monthly income in excess of $500.00, any question with respect to the trustees' authority to terminate the trust seems to have been foreclosed by the specific instruction that *"in no event* shall they sell, encumber or dispose of such properties as long as they produce a net income of $500.00 per month." (Emphasis supplied.)

Judgment affirmed.