Claude B. HUDSPETH, III, Mary
Hudspeth Cronin and Roy
Hudspeth, Appellants,

v.

Inez HUDSPETH, Appellee.

No. 04–83–00005–CV.

Court of Appeals of Texas,
San Antonio.

April 18, 1984.

Rehearing Denied May 24, 1984.

Bruce Robertson, Jr., San Antonio, for appellants.

Craig Porter, San Angelo, for appellee.

Before CADENA, C.J., and CANTU, and TIJERINA, JJ.

CANTU, Justice.

This is an appeal from the granting of summary judgment based on the affirmative defense of *res judicata*. Appellants also complain of the court's failure to grant their motion for partial summary judgment based solely upon the applicability of *res judicata*.

The plaintiffs/appellants are the only children of their deceased father, Claude B. Hudspeth, Jr. and the remaindermen under his will. Inez Hudspeth is the defendant/appellee and the surviving spouse/life tenant under the will.

Claude B. Hudspeth, Jr., died testate in 1948 and was survived by his wife, Inez Hudspeth and three minor children from a prior marriage. His last will and testament was admitted to probate by the county court of Val Verde County. By the terms of the will the surviving widow received a life estate in his real property with remainder to his three minor children. The decedent's estate included a ranch of approximately 16,359 acres in Val Verde and Crockett counties which had been his separate property.

Appellants filed the instant trespass to try title lawsuit in 1982 to quiet their title to the minerals in the ranch property and to recover bonuses, royalties and delay rentals received by appellee in the past as a result of the production and severance of oil and gas from the land. Appellants made no contention that they were entitled to present enjoyment.

Appellee answered alleging, among other defenses, *res judicata*. She then filed her motion for summary judgment predicated solely upon *res judicata*. Attached to her motion were the petition, answer, and judgment of the trial court in the 1950 case upon which appellee's motion relies. Appellants filed a supplemental petition and responded to the motion for summary judgment with their own motion for partial summary judgment supported by affidavit. The trial court granted appellee's motion and this appeal is predicated solely upon the propriety of this ruling.

Essentially, appellants' latter lawsuit sought a judicial determination that they, as remaindermen under their father's will, own his lands and the minerals thereunder, subject only to the appellee's rights as life tenant to receive the rents, revenues and income derived from the land. Appellants also sought to prevent waste of their mineral interest by appellee's conversion of the bonuses, royalties and delay rentals being realized from the production and severance of oil and gas from the land.

The will of Claude B. Hudspeth, Jr., provided in part:

I also give to said Inez Hudspeth all rents, revenues and income of every kind and character derived from the real estate belonging to me at the time of my death during the span of her natural life or until her marriage.

In 1950, appellants filed suit against appellee to cause an accounting of the properties constituting their late father's estate, seeking construction of the will, to determine widow's election and seeking continuation of child support payments as well as other relief not pertinent to this appeal.

Appellee answered by specially excepting to appellants' allegations and by denying that appellants were entitled to any present rights in the property of the estate of Claude B. Hudspeth, Jr. Appellee also denied there existed a present need to construe the will, a need to make a widow's election, a duty to furnish support to the appellants and the need to furnish an accounting.

On December 27, 1950, a bench trial was had upon the pleadings and the answer on file. The judgment entered found, in pertinent part:

(1) Under the terms of the will the appellants were given no interest of present enjoyment in the property of the estate or the income therefrom until the death or remarriage of appellee.

(2) Trusts created by the will for the use and benefit of the minors (appellants) do not become operative until the death or remarriage of the appellee.

(3) By the terms of the will there was devised and bequeathed to appellee, among other things, all rents, revenues and income of every kind and character from the real estate belonging to Claude B. Hudspeth, Jr. for the term of her natural life, or until her marriage; also, all personal property and the right to execute grazing leases as well as oil and gas leases.

Moreover, the judgment decreed that appellee be quieted in the use and enjoyment of the 16,359 acre tract of land for the term of her natural life, or until her marriage and that she was entitled to receive, among other things, all rents, revenues and income of every kind and character from said real estate . . . for her natural life or until her marriage, including income from grazing leases and oil and gas leases.

■ In deciding whether or not there is a disputed material fact issue precluding summary judgment, evidence favorable to the appellants will be taken as true and every reasonable inference must be indulged in favor of the appellants and any doubts resolved in their favor.

■ Furthermore, appellee had the burden of showing that there was no genuine issue of material fact and that she was entitled to judgment as a matter of law. *See Wilcox v. St. Mary's University of San Antonio, Inc.*, 531 S.W.2d 589, 592–93 (Tex.1975).

■ The principle of *res judicata* is applicable only when definite elements are shown to exist, namely, identity of parties, issues, subject matter, relief sought and cause of action. *Franklin v. Rainey*, 556 S.W.2d 583, 585 (Tex.Civ.App.—Dallas 1977, no writ); *Lozano v. Patrician Movement*, 483 S.W.2d 369, 371 (Tex.Civ.App.—San Antonio 1972, writ ref'd n.r.e.).

■ Appellee argues that the prior judgment precludes litigation because the instant case involves the same parties and the same subject matter previously adjudicated. However, no mention is made of the remaining elements; namely issues, relief sought and cause of action. *See Franklin v. Rainey, supra.*

Appellee's argument is based upon a mistaken belief that, in both lawsuits, appellants sought to quiet their title to their interest in the realty. In truth and in fact, however, appellants' prior lawsuit sought a declaration of their interests under their father's will whereas the instant lawsuit seeks to protect the interests thus acquired as a result of the will construction in the prior lawsuit.

At the time of the will construction, as at the time of the testator's death, no mineral production was in existence nor were mineral leases executed. Thus there was, at that time, no reason to charge appellee with wasting the corpus of the realty or to seek an accounting of the proceeds derived from production.

The controlling question before this Court is, therefore, whether title to the mineral estate was previously adjudicated in the earlier trial, and if so, whether through passage of time new facts have occurred which may alter the legal rights or relations of the parties.

In order to justify the conclusion that appellee was previously awarded all the interest in mineral production during her life estate, this Court would have to hold that an adjudication awarding appellee "all rents, revenues and income of every kind and character from the real estate ..." necessarily encompasses royalties, bonuses and delay rentals. Such a conclusion is, for the most part, not supported by the record. Neither the will, the prior judgment, nor the pleadings in the prior suit reflect that such was intended or even the subject of contention between the parties. *See Davis v. First Nat. Bank of Waco*, 139 Tex. 36, 161 S.W.2d 467, 471 (1942); *Harrell v. Harrell*, 428 S.W.2d 370 (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.).

■ Judgments, like other written instruments, are to be construed as a whole toward the end of harmonizing and giving effect to all the court has written. What the court has adjudicated is to be determined from a fair reading of all the provisions of the judgment. *Constance v. Constance*, 544 S.W.2d 659, 660 (Tex.1976).

■ In determining whether a party to a suit is concluded by the decision of a question of fact or of law made in a former suit to which he or one through whom he holds title was a party, it is necessary not only to look to the terms of the judgment rendered in the former suit, but also to consider that judgment, its findings and recitals in the light of settled rules as to the principles of res judicata or conclusiveness of judgment. *Davis v. First Nat. Bank of Waco, supra.*

Appellee insists *res judicata* is still applicable because the question as to whether the bequest of income consisting of all rents, revenue and income of every kind and character from the real estate included royalties, bonuses and delay rentals from the oil and gas leases could have been litigated in the prior suit.

Much has been said about and much confusion cast upon the doctrine of *res judicata* because of the oft-quoted general rule that, "the judgment in the first suit precludes a second action by the parties and their privies not only on matters actually litigated, but also on causes of action or defenses which arise out of the same subject matter and which might have been litigated in the first suit."

The Supreme Court in *Moore v. Snowball*, 98 Tex. 16, 81 S.W. 5 (1904) was sensitive to the problem created from a naked reading of the foregoing general rule. In recognizing that the rule has oftentimes been abbreviated so as to be misleading, the court, quoting from *City of Aurora v. West*, 74 U.S. (7 Wall) 82, 19 L.Ed. 42 (1869), explained the statement to mean:

> [T]hat a judgment is conclusive upon the issues tendered by the plaintiff's complaint. It may be that the plaintiff might have united other causes of action with that set out in his complaint, or that the defendant might have interposed counterclaims, cross-bills, and equitable defenses, ...
>
> \* \* \* \* \* \*
>
> But as long as these several matters are not tendered as issues in the action, they are not affected by it.

*Moore*, 98 Tex. at 25, 81 S.W. at 8–9.

The general rule was said to correctly mean that an adjudication is final and conclusive, "not only as to the matter actually determined, but as to every other matter which the parties might have litigated and have had decided *as incident to or essen-*

*tially connected with the subject matter of the litigation, and every matter coming within the legitimate purview of the original action."* (Emphasis ours). *Id.* at 24–25, 81 S.W. at 8.

■ Thus the rule means only that all matters which properly belong to a cause of action asserted in the pending suit, such as will sustain or defeat, in whole or in part, that cause of action, must be produced or be barred by the judgment. It does not mean that all the different causes of action a party may have respecting the same property must be joined in one proceeding simply because it is permissible to do so.

■ We do not believe that the prior judgment undertook to assign any other meaning to the word "income" than is generally understood when referring to income from the realty. According to *Clyde v. Hamilton,* 414 S.W.2d 434, 439 (Tex.1967), "income" from the land does not comprehend royalties and bonuses; although it does include delay rentals. *See Kemp v. Hughes,* 557 S.W.2d 139, 143 (Tex.Civ.App. —Eastland 1977, no writ) (delay rentals do not depend on production of oil and gas and do not exhaust substance of land). *See also Commissioner of Internal Revenue v. Wilson,* 76 F.2d 766, 769 (5th Cir.1935). Therefore, the trial court's finding did not award appellee, or divest appellants of, royalties and bonuses.

■ We believe the trial court's construction indicates that appellee was entitled to receive income from mineral leases consisting of interest derived from the investment of royalties and bonuses in addition to the proceeds from grazing leases and delay rentals paid under mineral leases. A judgment is *res judicata* only with respect to facts and conditions that existed at the time of the judgment. It does not prevent re-examination of the same question between the same parties where facts have changed or new facts arise which alter the rights or relations of the parties.

*City of Lubbock v. Stubbs,* 160 Tex. 111, 327 S.W.2d 411, 414 (1959); *Cowling v. Colligan,* 158 Tex. 458, 312 S.W.2d 943, 947 (1958).

A reading of *Moore v. Vines,* 474 S.W.2d 437 (Tex.1971), does not, as appellee suggests, disclose support for her contention that a new exception to the rule announced in *Clyde v. Hamilton, supra,* is now recognized by the Supreme Court.

In *Clyde v. Hamilton,* the court reaffirmed the well established rule that a life tenant may not dispose of the corpus of the estate which must be preserved for the remaindermen. It was said that minerals are part of the land and royalties and bonuses are part of the consideration for the sale of the land, and that, therefore, royalties and bonuses are corpus which is to be preserved for the remaindermen. The life tenant, it was recognized, was entitled to the interest or income derived from the investment of the royalties and bonuses. *Id.* at 439.

An exception to the foregoing rule was said to exist under the "open mine" doctrine; that is, if the testator had opened the mine and gave no directions as to the impounding or expenditure of the proceeds from the mine, the law presumed an intent that the life tenant could expend or dispose of them as the testator could. Thus it was supposed that royalties and bonuses under these circumstances belonged to the life tenant. *Moore v. Vines,* contrary to the appellee's position, did not enlarge the above stated rule by carving out yet another exception. It did hold that the open mine doctrine does not apply beyond the life of the lease in existence at the time of the vesting of the life estate; that is, the rights of the life tenant expire upon the termination of the lease. Thus, without specific authority in the will to *continue* mineral development, the granting of new leases does not operate as an open mine existing prior to the vesting of the life estate.[1]

1. Appellee suggests that the estate granted her is more than a life estate and likens her estate to

that in *Edds v. Mitchell,* 143 Tex. 307, 184 S.W.2d 823 (1945). The will in the instant case,

■ Appellants' action to enjoin waste and for accounting is a cause of action that arose subsequent to the entry of the prior judgment and, therefore, *res judicata* is not a bar. *See Cowling v. Colligan, supra; Fort Worth Stockyards Co. v. Brown,* 161 S.W.2d 549, 555 (Tex.Civ.App. —Fort Worth 1942, no writ).

Appellee did not bring herself within the requirements of a *res judicata* plea because it was not shown that the issues were the same, that the cause of action was the same and that the relief sought was the same as in the prior adjudication. The trial court erred in granting summary judgment based upon *res judicata.* The judgment of the trial court is reversed and the cause is remanded.

TIJERINA, Justice, dissenting.

I respectfully dissent. The trial court sustained appellee's motion for summary judgment on the grounds that the suit was barred under the doctrine of *res judicata.*

Appellants are the surviving children of Claude B. Hudspeth, deceased, from a prior marriage and appellee is his surviving wife. Under decedent's last will and testament, duly admitted to probate, appellee was devised a life estate in all his real property with remainder to appellants. The life estate included a ranch having approximately 16,359 acres. In 1950, appellants filed suit against appellee praying for an accounting, determination of matters pertaining to child support, widow's election, for a declaratory judgment to construe the will, and to determine the rights of the parties under the will. Appellants filed their present trespass to try title suit in 1982 seeking to quiet their title to the minerals in the ranch lands of their deceased father and to recover bonuses, royalties, and delay rentals which they allege appellee wrongfully received. The main contention was that the production and severance of oil and gas deprived them of and wasted their mineral interest.

however, does not create an express life estate with full power of disposition, nor does a read-

The relevant and pertinent part of decedent's last will and testament provided as follows:

Item Two

I give and devise all personal property belonging to me at the time of my death unto my beloved wife, Inez Hudspeth, to have, hold and enjoy so long as she shall live, or until her marriage. I also give to the said Inez Hudspeth all rents, revenues and income of every kind and character derived from the real estate belonging to me at the time of my death during the span of her natural life, or until her marriage. The bulk of my estate consists of ranch land and the livestock situated thereon. There is very considerable indebtedness against both the real and personal property. My wife, Inez Hudspeth, shall, out of the income derived from said properties, and before appropriating any of said income to her own use, pay the interest and fixed charges against said properties, the taxes, and after appropriating to her own use only a sufficient amount to live on comfortably, the balance of said income shall be applied, first, to the payment of the indebtedness against the livestock, and when that indebtedness has been liquidated, she shall then apply such surplus balance to the principal indebtedness against the real estate. Or she may, *in her discretion* sell the livestock and apply the proceeds thereof to the payment of the mortgage indebtedness against said livestock, and any balance received to the principal indebtedness against the real estate, then lease the ranch lands at the then prevailing price, *and all income of every kind and character derived therefrom,* after meeting the fixed charges, if any remains, against said livestock and real estate, *the balance of said rental payments shall be the sole and separate property of the said Inez Hudspeth to apply as in her judgment may seem wise and proper. But, if she so desires, she may continue to operate said ranch*

ing of the 1950 judgment support such a construction.

*as a going concern,* and in such event *shall have the power to sell* any and all livestock raised by her and purchase additional livestock as may be necessary to keep said ranch properly stocked. *She may pay all expenses necessary in the operation of said ranch,* but must at all times keep the taxes and other fixed charges against said land and livestock paid. *To this end she may make bills of sale to livestock, a lease or leases on land, either for grazing purposes or for oil and gas,* sell wool, buy bucks, and do and perform any and everything necessary and proper in the operation of said business. [Emphasis added.]

Appellants' pleadings in their first amended original petition filed in the 1950 lawsuit included the following:

... Plaintiffs say that it is now necessary to construe said Will and determine the rights of the parties and *that all questions in connection with such Will should be heard and determined by Declaratory Judgment,* if necessary, in order to avoid a multiplicity of suits and *prevent loss and possible loss, of interest and property to Plaintiffs.* [Emphasis added.]

The prior judgment in Cause No. 5981 styled *Claude B. Hudspeth, III, et al. v. Inez Hudspeth, et al.,* was rendered by the District Court of Val Verde County on the 27th of December, 1950. The court expressly found and decreed that defendant had no duty to report to plaintiffs as to the condition of the estate; that plaintiffs under the terms of the will were not given an interest of present enjoyment of said estate or the income therefrom until the death or remarriage of defendant; that under the term of the will defendant was devised and bequeathed all rents, revenues and income of every kind and character from the real estate and the right to execute grazing leases and oil and gas leases. Additionally, the judgment decreed the following: "It is further ordered, adjudged and decreed by the court that the said Inez Hudspeth be quieted in the use and enjoyment of said 16,359 acres tract of land for the term of her natural life, or until her marriage.

In the instant case, appellants in their first amended original petition allege, among other things, that appellee executed oil and gas leases and is wrongfully receiving the bonuses, delay rentals, and royalties, because under the terms of the testator's will they own all the minerals and that appellee dispossessed them of their interests in the lands. Additionally, appellant asked for an order to quiet their title to their interest in the land, and that the court ordered appellee to render an accounting as to all sums of money received. Thus it appears that this case involves the same parties and the same subject matter, which conclusively establishes the requirements of *res judicata.* Under the doctrine of *res judicata,* a judgment is a final adjudication, not only of matters actually determined, but also of all other matters which the parties might litigate in the cause, and which they might have had decided. *Valley Oil Co. v. City of Garland,* 499 S.W.2d 333, 335 (Tex.Civ.App.—Dallas 1973, no writ). The Supreme Court reiterated the rule in *Texas Water Rights Commission v. Crow Iron Works,* 582 S.W.2d 768 (Tex. 1979), stating:

The doctrine of res judicata states that a cause of action once finally determined, without appeal, between the parties, on the merits, by a competent tribunal, cannot afterwards be litigated by new proceedings either before the same or any other tribunal. The scope of res judicata is not limited to matters actually litigated; the judgment in the first suit precludes a second action by the parties and their privies not only on matters actually litigated, *but also on causes of action or defenses which arise out of the same subject matter and which might have been litigated in the first suit.* [Emphasis added.] [Citations omitted.]

*Id.* at 771–72.

Appellants argue that the instant case is a different cause of action because there was no production of oil and gas at the time of the prior adjudication and that *res judicata* is not applicable because conditions changed and material new facts arose

subsequent to the prior suit. In *Clyde v. Hamilton*, 414 S.W.2d 434, 439 (Tex.1967), the Supreme Court stated:

> The general rule of property law is that a life tenant may not dispose of the corpus of the estate.... The royalties and bonuses are corpus which is to be preserved for the remaindermen. The life tenant, however, is entitled to the interest or income derived from the investment of the royalties and bonus.

An exception to the rule is the "open mine" doctrine, where the mine was open at the time the life estate began. The Supreme Court in *Clyde* further stated that:

> When ... a testator had opened the mine, and he gave no directions as to the impounding or expenditure of the proceeds from the mine, *the law presumed an intent that the life tenant could expand or dispose of them as ... the testator could.* So the proceeds did not become part of the corpus to be preserved for the remaindermen. [Emphasis added.]

*Id.* at 439. In a later case, *Moore v. Vines*, 474 S.W.2d 437 (Tex.1971), the Supreme Court refused to approve a lease for mineral development executed by the life tenant, stating:

> Troy Vines as *life tenant was not authorized by the will of Ruby Vines to lease the land for mineral development* nor was *he given enjoyment of the proceeds from any such lease.* Under these circumstances *we are unable to attribute an intent to* Ruby Vines that the land should continue to be leased for mineral development for the benefit of Troy Vines with a resulting diminishment in the value of the interest of the remaindermen. [Emphasis added.]

*Id.* at 440.

Obviously, the Supreme Court has recognized another exception to the general rule enunciated in *Clyde v. Hamilton, supra.* It now appears that *remaindermen have no right to enjoyment of the corpus of the estate or the proceeds from mineral developments in those instances where the life tenant was expressly authorized by the will of the testator, to lease the land for mineral development, and was bequeathed the enjoyment of the proceeds from such leases.*

The court in the prior suit determined and rendered final judgment on the same issues raised in the present case. The trespass to try title question was disposed of by the provision in the judgment, "that Inez Hudspeth be quieted in the use and enjoyment of the said 16,359 acre tract of land for the term of her natural life, or until her remarriage, ..." The trial court gave effect to the intent of the testator by decreeing, "by the terms of said will there was devised and bequeathed to her (appellee), among other things, all rents, revenues and income of every kind and character from the real estate ... and the right to execute grazing leases and oil and gas leases; ..." The court further ruled that plaintiffs (appellants) under the terms of the will were not given an interest of present enjoyment of the estate or the income therefrom until the death or remarriage of Inez Hudspeth, and lastly that said Inez Hudspeth had no duty to report to plaintiffs as to the condition of the estate. The question of whether the bequest of income of all rents, revenue and income of every kind and character from the real estate included income, royalties and bonuses from the oil and gas leases constituted an issue that could have been litigated in the prior suit. Consequently, even if the court was wrong on the interpretation or import of the word "income," the application of *res judicata* was not affected. *See Segrest v. Segrest*, 649 S.W.2d 610, 612–13 (Tex.1983). Appellants consider their action a trespass to try title matter. *But,* their trial petition in the present suit clearly prays for a declaratory judgment for determination of their rights to an interest in the land and minerals, including past and future productions. Declaratory judgment is an improper, as well as impermissible, collateral attack on a final and valid judgment. *Segrest v. Segrest, id.,* at 613.

Appellants contend that a judgment is *res judicata* only with respect to facts and

conditions that existed at the time of the judgment and that it does not prevent a re-examination of the same question between the same parties where facts have changed or new facts arise which alter the rights or relations of the parties, citing *City of Lubbock v. Stubbs*, 160 Tex. 111, 327 S.W.2d 411 (1959). But, in the *Stubbs* case the prior and subsequent suits involved different use of the land in question under different city ordinances and the present suit had not been heard on its merits. *Stubbs*, 327 S.W.2d at 414. Thus, it is apparent that all the essential issues of fact have been conclusively determined and adjudicated in the prior suit, on the same subject matter, between the same parties and appellants cannot relitigate the same issues and subject matter in the present suit. There is no record evidence of changed conditions or new material facts that have arisen subsequent to prior suit. There is no evidence in this record favorable to appellant, to show a disputed fact issue that would preclude the summary judgment.

I would affirm the judgment.