**Claude B. HUDSPETH III, Mary Hudspeth Cronin, and James Royal Hudspeth, Appellants,**

v.

**Inez HUDSPETH, et al., Appellees.**

**No. 04–86–00346–CV.**

Court of Appeals of Texas, San Antonio.

July 20, 1988.

Rehearing Denied Aug. 26, 1988.

Bruce Robertson, Jr., San Antonio, for appellants.

Craig Porter, San Angelo, Elizabeth M. Marsh, Midland, George J. Carson, San Antonio, for appellees.

Before CADENA, C.J., and DIAL and CHAPA, JJ.

## OPINION

DIAL, Justice.

This will construction case is appealed for a second time to this Court. The full facts and procedural history may be found in *Hudspeth v. Hudspeth*, 673 S.W.2d 248 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.).[1]

After summary judgment in favor of appellee Inez Hudspeth was reversed by this Court and the cause remanded, the appellants (the Hudspeth children) joined as additional defendants in the trial court the mineral lessees and their assignees. The Sun Exploration and Production Company and the Sun Oil Company are referred to here as the Sun appellees. The other parties to the appeal are referred to as the Indian Wells appellees.

Significant evidence offered at the re-trial, apparently absent from the summary judgment proof considered in the previous

---

1. The language of the will which the trial court construed is as follows:

### Item Two

I give and devise all personal property belonging to me at the time of my death unto my beloved wife, Inez Hudspeth, to have, hold and enjoy so long as she shall live, or until her marriage. I also give to the said Inez Hudspeth all rents, revenues and income of every kind and character derived from the real estate belonging to me at the time of my death during the span of her natural life, or until her marriage. The bulk of my estate consists of ranch land and the livestock situated thereon. There is very considerable indebtedness against both the real and personal property. My wife, Inez Hudspeth, shall, out of the income derived from said properties, and before appropriating any of said income to her own use, pay the interest and fixed charges against said properties, the taxes, and after appropriating to her own use only a sufficient amount to live on comfortably, the balance of said income shall be applied, first, to the payment of the indebtedness against the livestock and when that indebtedness has been liquidated, she shall then apply such surplus balance to the principal indebtedness against the real estate. Or she may, in her discretion, sell the livestock and apply the proceeds thereof to the payment of the mort-gage indebtedness against said livestock, and any balance received to the principal indebtedness against the real estate, and then lease the ranch lands at the *then* prevailing price, and all income of every kind and character derived therefrom, after meeting the fixed charges, if any remains, against said livestock and real estate, the balance of said rental payments shall be the sole and separate property of the said Inez Hudspeth to apply as in her judgment may seem wise and proper. But, if she so desires, she may continue to operate said ranch as a going concern, and in such event shall have the power to sell any and all livestock raised by her and purchase additional livestock as may be necessary to keep said ranch properly stocked. She may pay all expenses necessary in the operation of said ranch, but must at all times keep the taxes and other fixed charges against said land and livestock paid. To this end she may make bills of sale to livestock, a lease or leases on land, either for grazing purposes or for oil and gas, sell wool, buy bucks, and do and perform any and everything necessary and proper in the operation of said business. She may also during her tenure of said property, renew and extend any deed of trust against the real estate; but shall not increase any loan that may be in existence at the time of my death.

appeal, established that oil and gas leases existed on the property in question at the time of the testator's death. Other evidence offered supported the jury's answers to the defensive issues of laches, waiver, estoppel, and limitations.

The judgment of the trial court was that the plaintiffs take nothing in damages against any defendants. The will was construed to give Inez Hudspeth a life estate entitling her to receive and retain all income of every kind from the realty including mineral lease bonuses and royalties. The leases executed by Inez were adjudged to be valid. It was further determined that the 1950 judgment decreed the same entitlement and authority in favor of Inez, and therefore, the relief sought by plaintiffs was barred under the doctrine of *res judicata* and collateral estoppel. Inez's title was quieted.

The Hudspeth children now bring eight points of error. The first three attack the judgment, contending that the Hudspeth children were entitled to the royalties and bonuses as a matter of law, that the court erred in construing the will to conclude that the testator intended to give Inez the royalties and bonuses, and holding that the Hudspeth childrens' cause of action for royalties and bonuses was barred by *res judicata* and collateral estoppel.

The substance of the Hudspeth childrens' contention is that the will gave Inez nothing more than a life estate. As a life tenant Inez could not consume and convert the corpus of the estate to her own use. Mineral royalties and bonuses are part of the corpus; therefore, Inez has no right to consume royalties or bonuses in the past or in the future.

Texas law is well settled that a mere life tenant is not entitled to consume mineral royalties and bonuses. *Clyde v. Hamilton,* 414 S.W.2d 434, 439 (Tex.1967). Absent express direction in the instrument establishing the life tenancy, such a tenant may not dispose of the corpus and may not commit waste. *Enserch Exploration, Inc. v. Wimmer,* 718 S.W.2d 308, 311 (Tex.App.—Amarillo 1986, writ ref'd n.r.e.). On the other hand, a testator may expressly bestow upon a life tenant the power to completely dispose of the corpus if he so desires, and by his doing so, the life tenant may destroy any contingent interests held by remaindermen. *Calvert v. Thompson,* 339 S.W.2d 685 (Tex.Civ.App.—Austin 1960, error ref'd) and authorities cited therein. The language of the Hudspeth will puts the present case somewhere between these two extremes.

The Hudspeth children rely in their recovery of royalties and bonuses on Item Two of the will, the 1950 judgment, and the panel opinion of this Court in *Hudspeth v. Hudspeth, supra.* They point out that royalties and bonuses are not expressly conveyed to Inez in the will. Neither the will nor the 1950 judgment use the words royalties or bonuses. The 1950 judgment largely repeats the language of the will, adding that Inez was entitled to "income" from oil and gas leases. The appellants emphasize that the opinion in *Hudspeth* adopted the meaning of "income" from *Clyde v. Hamilton* as not including royalties and bonuses. The contention is here made that this determination became *the law of the case* and should govern throughout all subsequent stages.

The Hudspeth children's reliance on the prior opinion of this Court is misplaced. The doctrine of law of the case does not necessarily apply when either the issues or the facts presented at successive appeals are not substantially the same. *Hudson v. Wakefield,* 711 S.W.2d 628, 630 (Tex.1986). The doctrine only applies to questions of law, not questions of fact.

The previous appeal in this case was from the granting of a summary judgment. The only issue to be decided on that appeal was whether or not the movant below had established that she was entitled to summary judgment as a matter of law, and a majority of the panel concluded that she was not. That panel of the court was apparently led to believe from the summary judgment proof that at the time of the testator's death and at the time of the will construction in the 1950 judgment no mineral leases had been executed. Therefore an accounting of the proceeds of such min-

eral leases was not a subject of contention before the court, and the trial court made no ruling on it that would amount to *res judicata.*

We now know from the present record that mineral leases had in fact been executed by the testator and Inez and were still in effect at the time of the 1950 judgment. We know also that the 1950 suit by the Hudspeth children did pray for a will construction and an accounting. The judgment held that Inez was under no duty to account to the Hudspeth children, but she was entitled to income from the oil and gas leases. Since there was identity of the cause of action, identity of relief sought and identity of the parties (excluding the Sun and Indian Wells appellees), the trial judge was correct in holding that the 1950 judgment was *res judicata. Lozano v. Patrician Movement,* 483 S.W.2d 369, 371 (Tex.Civ.App.—San Antonio 1972, writ ref'd n.r.e.).

■ But since the 1950 judgment is no more elucidative than the will itself, the Hudspeth children argue that we should take the term "income" in both instruments and ascribe to it the meaning given in *Clyde v. Hamilton,* i.e., that Inez could not consume but should save intact the royalties and bonuses for the remaindermen. As stated above, this rule would apply absent a contrary intent appearing in the instrument creating the life estate. *Clyde v. Hamilton,* involved a holographic will that stated:

> I hereby give & bequeath to my husband for his lifetime all property of every kind wherever situated. Inherited property shall remain intact & revert back to my heirs as designated unless circumstances of need necessitate otherwise.

It is noteworthy that the word "income" and the phrase "income of every kind and character" is nowhere in the *Clyde* will. So we are not necessarily bound to apply the construction contended by the Hudspeth children.

Where a will gives express instruction on impounding the royalties, courts have no trouble requiring that they be saved for the remaindermen. Even in the absence of such instructions, courts will impound royalties and bonuses for the benefit of remaindermen since they are the corpus of the estate. *Enserch Exploration, Inc. v. Wimmer, supra.*

The difficulty of this rule is not borne out of its application to the facts, but whether to apply it at all. It is the paramount rule in a will construction case to determine the testator's intent. *Kaufhold v. McIver,* 682 S.W.2d 660 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). The testator's intent is to be determined from the words contained in the will. *Knesek v. Witte,* 715 S.W.2d 192 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). If the testator's intent can be determined from the will itself, rigid observation of precedent and other rules is not absolute and controlling. *Burton v. King,* 459 S.W. 2d 663, 669 (Tex.Civ.App.—Tyler 1970, writ ref'd n.r.e.).

In the instant case, there were no instructions on impounding royalties or bonuses. Instead, the testator directed that Inez receive "all rents, revenues and income *of every kind and character* (emphasis added) derived from the real estate" for her life or until she married. The testator also left instructions that out of the income derived from the properties Inez was to pay the taxes, interest, and other fixed charges on the property. After she had done that, she could appropriate to her own use a sufficient amount to live on comfortably. The jury found in Issue No. 19 that Inez had used $458,568.51 of the monies she received from the oil companies to pay off the debt of the estate. Inez had the right to use royalties and bonuses to pay ranch expenses and debts. *Guest v. Bizzell,* 271 S.W.2d 472, 476 (Tex.Civ.App.—Eastland 1954, writ ref'd).

We believe that Inez was given express direction as to what she could do with any and all income from the realty with no requirement for impounding royalties and bonuses. We further believe that it was not the testator's intent to limit Inez's inheritance to "income" as it is used in a strictly legal sense (e.g. delay rentals only).

The trial court found her conduct to be in accord with the testator's intention, and we do not find that conclusion to be erroneous considering the language used in the will.

The Hudspeth children further contend that the will should be construed to find that Inez could not execute mineral leases unless she was still operating the ranch as a going concern. If she did execute such leases, she could not utilize the royalties or bonuses to discharge debts of the estate, but she should keep them intact for the children.

■ While such a construction might be possible, it is not required as a matter of law. We favor rather the rule that where a will contains a provision that upon a certain contingency an estate given to one shall pass to another, the law favors the first taker. The testator's language should be construed so as to grant to the first taker the greatest estate which by fair construction, it is capable of passing. *Burton v. King*, 459 S.W.2d 663, 667 (Tex.Civ. App.—Tyler 1970, writ ref'd n.r.e.).

The trial court was correct in its construction of the will and conclusion that the 1950 judgment was *res judicata* barring the Hudspeth children's claims. Points of error one, two and three are overruled.

The next two points of error take issue with the trial court's refusal to disregard jury finding No. 19. Appellant's contend that the evidence is legally and factually insufficient to support the jury's answer to question No. 19 and further that the question did not submit a controlling issue. Since the only objection before the trial judge to question No. 19 was a "no evidence" objection, the error that it did not submit a controlling issue is waived. TEX. R.CIV.P. 272.

Inez gave rather lengthy testimony regarding her efforts to pay expenses and debts of the estate. Various documents were offered into evidence on the same subject matter. Appellants complain that the evidence was not cogently presented or summarized by documentary evidence. This merely went to the weight to be accorded the evidence not to its admissibility.

There was ample evidence to support the jury finding.

Further, appellants have failed to show how they were harmed by this issue as submitted and how it caused rendition of an improper judgment in the case. TEX.R. APP.P. 81(b)(1). The fourth and fifth points of error are overruled.

The sixth point of error complains of the trial court refusing to disregard the jury's answers to Issues 1, 2, 4, 5, 6 and 7. These were issues requested by Sun and the Indian Wells appellees and submitted the defenses of laches, waiver, and estoppel. Although the court incorporated the verdict of the jury into the judgment for all purposes, the court did not base it's judgment on those particular findings. Any liability on the part of the Sun or Indian Wells appellees for damages was dependent on a finding that Inez did not have authority to execute oil and gas leases or receive payments of royalties and bonuses thereunder. Since we have approved the finding of the trial court that Inez was entitled to receive the royalties and bonuses, the portion of the judgment decreeing that the Hudspeth children take nothing against the Sun and Indian Wells appellees is likewise approved. The appellant's have failed to show that disregarding answers 1, 2, 4, 5, 6 and 7 caused rendition of an improper judgment in this case. TEX.R.APP.P. 81(b)(1). Further, the point of error is based on the argument that these questions did not submit controlling issues. Appellants' only objection to the issues at the trial court level were "no evidence" objections. The objection as to not presenting controlling issues is therefore waived. TEX.R.CIV.P. 272. Point of error six is overruled.

Under the seventh point of error appellants claim error in the trial court failing to enter judgment quieting their title to the mineral estate. Their argument is the same as that presented under the first three points of error, i.e., their interpretation of the will in the 1950 judgment. For the same reason, the point of error is overruled.

■ In their eighth point of error, appellants allege that the trial court was in error

in awarding the appellees attorney's fees on the counterclaim for declaratory judgment. We disagree. Appellants allege that appellees counterclaim was a reiteration of portions of their answer.

We are guided by the decision in *Narisi v. Legend Diversified Investments,* 715 S.W.2d 49 (Tex.App.—Dallas 1986, writ ref'd n.r.e.).

The court in *Narisi* was faced with identical facts. Narisi contended that Legend could not, as a matter of law, bring a declaratory judgment action as a counterclaim and that, therefore, the trial court erred in awarding attorney's fees under the then applicable declaratory judgment act. As in the case at bar, Narisi failed to properly except to the counterclaim or otherwise raise the issue until *after* the judgment was signed. *Id.* at 52. The court in *Narisi* held that Narisi had waived any error.

TEX.R.CIV.P. 90 states:

... Every defect, omission, or fault in a pleading either of form or of substance, which is not specifically pointed out by exception in writing and brought to the attention of the judge in the trial court before the instruction or charge to the jury or, in a non-jury case, before the judgment is signed, shall be deemed to have been waived by the party seeking reversal on such account ...

We agree with the court in *Narisi* and follow its logic. Where the appellants fail to specifically except as required by Rule 90 to reassertion of those causes of action, the appellees should not be denied recovery. Appellants have waived any error by their failure to specifically except. *See Estate of Stonecipher v. Estate of Butts,* 686 S.W.2d 101, 103 (Tex.1985). We overrule appellants' eighth point of error.

The judgment of the trial court is affirmed.

CHAPA, J., concurs in result.

CADENA, Chief Justice, concurring.

While I do not agree that the 1950 judgment is res judicata, I agree that Inez had the right to use the royalties and bonuses to pay all expenses necessary to the operation of the ranch. *See Guest v. Bizzell,* 271 S.W.2d 472, 476 (Tex.Civ.App.—Eastland 1954, writ ref'd).

I would not apply our prior opinion *Hudspeth v. Hudspeth* as the law of the case because, in view of the holding in *Guest,* it is clearly wrong, and finds no support in *Clyde v. Hamilton,* 414 S.W.2d 434 (Tex. 1967), which did not undertake to define "income."