Nadine Ivy PHILLIPS, Appellant,

v.

Betty Jean IVY, Appellee.

No. 10–02–00265–CV.

Court of Appeals of Texas, Waco.

Aug. 18, 2004.

John H. Minton Jr., Potter Minton, a Professional Corporation, Tyler, for appellant.

Bill Youngkin, Stacy & Dillard, Bryan, D. Lee Alford IV, Dallas, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

BILL VANCE, Justice.

We have two appeals involving testamentary and non-testamentary transfers of property by James Bradford Ivy, who died in September 1990 and was survived by his wife Betty and his only child, Nadine. This appeal addresses a declaratory judgment action filed by Nadine Ivy Phillips concerning Paragraph III of James's will, which purported to divide certain real property interests between Betty and Nadine, and a disclaimer signed by Betty.[1]

### THE WILL AND DISCLAIMER

Betty and James executed reciprocal wills. In Paragraph I of his will, James directed the payment of debts and funeral expenses and bequeaths to Betty his community interest in "all of the household goods, automobiles, clothing, jewelry and other personal belongings and all other *tangible* personal property owned by me at the time of my death." (Emphasis add-

1. In Cause No. 10–02–00266–CV, we address the non-testamentary transfers.

ed.). Paragraph II states: "It is my intention hereunder to dispose of my entire interest in my separate property and only my share of the community property." Regarding his real property, Paragraph III provides:

> I hereby give, devise and bequeath all of my real property, whether separate or community to my daughter NADINE IVY PHILLIPS, subject however to a life estate in said real property, including all the oil, gas, coal and other minerals which I hereby give, devise and bequeath to my wife, BETTY JEAN IVY, to use and enjoy during her lifetime, including all rents and profits therefrom as well as bonuses and royalty income.

The will did not have a residuary clause.

On June 20, 1991, Betty signed a disclaimer, which provided in relevant part the following:

> I hereby irrevocably and without qualification disclaim, renounce and refuse to accept any interest under Article III of the will other than a life estate, it being my intent hereby that I have no interest in the remainder of such property.

Betty filed a summary judgment affidavit by the attorney who prepared the estate tax return stating that the purpose of the disclaimer was to assure that her estate would not be exposed to the risk that rights in the remainder be included in her estate at her death.

## THE JUDGMENT

The parties agreed that certain proceeds from James's interest in real property were subject to Betty's conventional life estate, and the parties specified certain sums that had already been received that would be transferred to a trustee for investment. The trial court decided the remaining issues relating to Paragraph III of James's will, i.e., whether Betty received more than a conventional life estate as a result of the will and disclaimer, on competing motions for partial summary judgment. The court denied Nadine's Motion for Partial Summary Judgment and granted Betty's Motion for Partial Summary Judgment, making the following conclusions of law:

a. That the effect of Paragraph III of the Will of James Bradford Ivy, duly probated in Cause No. 6317 in the County Court of Freestone County, Texas, and the disclaimer of Betty Jean Ivy filed June 20, 1991, in such cause (both attached to such motion for Partial Summary Judgment as exhibits) do not operate to grant to Betty Jean Ivy a conventional life estate, but rather by specific bequest grants to her the right of full ownership of the proceeds of all oil, gas and other minerals to include bonuses and royalty income in all real property of the decedent James Bradford Ivy for the lifetime of Betty Jean Ivy, and the disclaimer executed by Betty Jean Ivy did not waive such right. As a result, the open mine doctrine does not apply to the above portion of the property of decedent.

b. That Defendant Betty Jean Ivy is entitled to the proceeds of all oil, gas, and other minerals to include bonuses and royalty income from all real properties of decedent James Bradford Ivy without any restrictions on ownership, use or accounting of such royalty income for her lifetime.

c. That with respect to real property of the decedent other than oil, gas and other minerals, the Defendant Betty Jean Ivy holds a conventional life estate, with remainder in the Plaintiff Nadine Ivy Phillips.

The judgment further implemented the parties' agreement and awarded Nadine attorney's fees.

## THE ISSUES ON APPEAL

On appeal, Nadine brings two issues that challenge the summary judgment:

1. Does the will of James Bradford Ivy give Defendant full ownership of all proceeds of all oil, gas and other minerals (including bonuses and royalty income) from decedent's real property during Defendant's lifetime and deny Plaintiff any remainder interest in such revenues?

2. Did the disclaimer executed by Defendant limit to a conventional life estate the bequest made to her in Paragraph III of decedent's will?

■ We review the decision to grant a summary judgment de novo. *Rucker v. Bank One*, 36 S.W.3d 649, 652–53 (Tex. App.-Waco 2000, pet. denied). A trial court may grant a summary-judgment motion when there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. *Texas Commerce Bank, N.A. v. Grizzle*, 96 S.W.3d 240, 252 (Tex.2002); *Singleton v. Donalson*, 117 S.W.3d 516, 517 (Tex.App.Beaumont 2003, pet. denied). When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties' summary judgment evidence and determine all questions presented. *Eckels v. Davis*, 111 S.W.3d 687, 693 (Tex.App.-Fort Worth 2003, pet. denied) (citing *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 605 (Tex.2002)). The reviewing court should render the

judgment that the trial court should have rendered.[2] *Id.* The parties do not dispute the relevant facts, so we focus our review on the interpretation of the will and the disclaimer.

■ As a general rule subject to exceptions, a life tenant may not dispose of the corpus of the estate; oil and gas royalties and bonuses are generally considered corpus. *Singleton*, 117 S.W.3d at 518; *see Moore v. Vines*, 474 S.W.2d 437, 439 (Tex. 1971); *Clyde v. Hamilton*, 414 S.W.2d 434, 438 (Tex.1967). But exceptions exist. *Singleton*, 117 S.W.3d at 518; *Hudspeth v. Hudspeth*, 756 S.W.2d 29, 31 (Tex.App.-San Antonio 1988, writ denied). For example, under the open mine doctrine, which is applied only to leases executed by the testator and in effect at his death, royalties and bonuses belong to the life tenant. *Singleton*, 117 S.W.3d at 518; *Riley v. Riley*, 972 S.W.2d 149, 155 (Tex. App.-Texarkana 1998, no pet.) (citing *Clyde v. Hamilton*, 414 S.W.2d 434 (Tex. 1967)). Another exception arises when the testator expressly says otherwise in the will; controlling effect is given to the intent of the creator of the life estate. *Singleton*, 117 S.W.3d at 518; *see Hudspeth*, 756 S.W.2d at 31.

■ By using the phrase "as well as bonuses and royalty income," James made a specific bequest to Betty of the royalties and bonuses from his real property in addition to the conventional life estate. We agree with the trial court's conclusions of law concerning the interpretation of Paragraph III of James's will.

■ Turning to the disclaimer, we find that Nadine's motion for partial summary

---

**2.** Nadine's motion for a partial summary judgment asserts that there are no fact issues and seeks judgment based on the terms of the will and the disclaimer. She does not seek a remand on the issues we decide; her prayer is for a holding that Betty owns only a conventional life estate in the real estate. Thus, the issues are properly before us on competing requests for summary judgment.

judgment argued the legal effect of the disclaimer. Betty's motion also argued the legal effect of the disclaimer. Both motions had the disclaimer attached as an exhibit, so there is no dispute about its contents. Nadine's response to Betty's motion asserts that the effect of the disclaimer can be determined as a matter of law and that the attorney's affidavit is immaterial.

The court specifically found that the disclaimer did not operate as a waiver, determining the disclaimer issue as a matter of law. Although they differ about the validity of that determination, both parties agree that the court had authority to do so. We find no reason to disagree with the trial judge's conclusion that the disclaimer did not operate as a waiver of any part of the life estate to which Betty was entitled under James's will.

We overrule Nadine's issues.

## CONCLUSION

Having overruled Nadine's issues, we affirm the judgment.

Chief Justice GRAY dissenting.

GRAY, Chief Justice, dissenting.

We should not go behind the language of the disclaimer. *See* TEX. PROB. CODE ANN. § 37A (Vernon 2003); *Badouh v. Hale*, 22 S.W.3d 392, 396 (Tex. 2000). I would hold that the disclaimer had the effect, even if the will was more expansive in its donative language, of limiting Betty's interest under Article III of the will to a traditional life estate. This would require a reversal of the trial court's judgment and a remand to the trial court to resolve issues that remain to be decided regarding the relative rights of the life tenant and the remainderman in the proceeds of the sale of the corpus and income derived therefrom.

All doubt about what the testator may have intended in his will was removed by the disclaimer signed by the widow. The disclaimer states:

I hereby irrevocably and without qualification disclaim, renounce and refuse to accept any interest under Article III of the will other than a life estate, it being my intent hereby that I have no interest in the remainder of such property.

If, for any reason, we somehow avoid the clear language of this disclaimer, we will have not only bent the words of this disclaimer beyond its breaking point, we will cause uncertainty in any estate planning application that involves the use of a disclaimer.

Due to the language used in the will, Betty wanted certainty and predictability with regard to her own estate planning, not just the benefits that she would receive under her husband's will. To achieve this certainty, she signed a formal legal document, as provided for by the probate code, that would have a certain effect: to identify and define the property that she was to receive under the will. I would give that legal document the effect that it has for all other purposes, and would hold that Betty's disclaimer limited the gift under Article III to a traditional life estate. Thus I would not need to address Phillips's first issue. Because the majority holds otherwise, I respectfully dissent.