**Robert Norman FARAH, James Clifton Farah, Kenneth Duane Farah and Haleen Farah, Appellants,**

v.

**The FIRST NATIONAL BANK OF FORT WORTH and Virginia H. Farah, Appellees.**

No. 18523.

Court of Appeals of Texas, Fort Worth.

Oct. 29, 1981.

Rehearing Denied Dec. 3, 1981.

Kolodey, Thomas, Dooley, Maris & Lilly, Tom Thomas, Dallas, for appellants.

Hudson, Keltner, Smith, Cunningham & Payne, Donald E. Herrmann, Fort Worth, Morris, Campbell & Seikel, David P. Seikel and Philip F. Snow, Jr., Houston, for appellees.

Before MASSEY, C. J., and SPURLOCK and HOLMAN, JJ.

## OPINION

HOLMAN, Justice.

This is an appeal from a defendants' summary judgment. Appellants complain that the trial court erred in granting final summary judgment for the appellees and denying the partial summary judgment sought by appellants.

Appellants filed suit for declaratory judgment to construe a probated will and its testamentary trust provisions. All parties agreed and stipulated to certain material facts.

Appellants claim the testator intended them to be ultimate beneficiaries of his estate, although the will does not expressly name them as such. Appellants requested partial summary judgment that the will is ambiguous and that they are entitled to prove the testator's intent by extrinsic evidence. Appellees moved for final summary judgment that the will is not ambiguous and that the appellants are not its contingent beneficiaries.

The court granted appellees' motions, and we affirm.

The person whose estate is the object of these proceedings was James Farah, who died January 30, 1964. His last will and testament was duly probated and created a trust for his widow, appellee Virginia Farah, and their two sons.

After making certain specific requests, the will's residuary clause placed one-half of the remaining estate in a trust for Virginia's benefit during her lifetime. The other one-half was placed in trust for the two sons until each attained age twenty-five, when their respective shares would vest.

Named as original trustee was the testator's brother, William Farah. William's children were plaintiffs in the trial court and are now the appellants.

They brought this action against Virginia and the bank serving as successor trustee. The petition asked the trial court to declare appellants to be the ultimate beneficiaries of the trust upon the termination of Virginia's life estate.

Appellants' claim is based partly on the fact that the testator's two sons are now deceased, neither having attained age twenty-five nor left issue surviving; and partly on the theory that extrinsic evidence would show that the testator intended the appellants to be the ultimate beneficiaries in that event, despite the will's failure to designate them as such.

Appellants' petition alleged that (1) the trust gave Virginia a life estate in half of the property, with remainder to the two sons; and a life estate for the sons in the other half, to vest at age twenty-five; (2) that both sons later died without attaining age twenty-five and without issue; (3) that the son's shares of the trust then were properly added to Virginia's life estate; but (4) that the trust *fails to provide* for the ultimate disposition of the trust properties upon Virginia's death.

Appellants further alleged that while the trust is *ambiguous* and *uncertain*, it is *clear* that the testator intended them to be his ultimate beneficiaries if his sons died before age twenty-five, without issue surviving.

Alternatively, appellants pled that the trust is *not* ambiguous and as a matter of law discloses that the testator intended them to receive the estate in the circumstances that exist.

The pertinent provisions of the will are: FOURTH:

After the payment of my just debts, funeral expenses and estate and inheritance taxes, and the specific devises and legacies, as above provided, I give, devise and bequeath all of the remainder of my estate and property to my brother, WILLIAM F. FARAH, of El Paso, Texas, in trust nevertheless, to hold, manage and distribute as follows, to wit:

A) My Trustee shall divide the trust estate into two equal portions, one of which shall be a separate trust for my wife, VIRGINIA HUSSON FARAH, and from such trust estate said Trustee shall pay to her the net income therefrom so long as she lives. The other one-half of the remainder of my estate shall be established as trusts for my children who shall survive my death. At the present time I have two children, namely, FRANK NICHOLAS FARAH, who was born June 18, 1953, and CLIFFORD JAMES FARAH, who was born October 16, 1957. . . .

B) Upon the death of my wife, Virginia Husson Farah, the corpus of her trust estate and any undistributed income shall be divided equally among the other trust shares herein created for my children. If Virginia Husson Farah should predecease me, or if she and I should meet our deaths as the result of injuries received in a common accident or disaster, or should she meet her death prior to the appointment of the Executor of my estate, then the trust herein created for her shall not become effective but such trust property shall be added to and beoome (sic) a part of the trust estate herein created for my children. When each child attains the age of twenty-five (25) years the Trustee shall pay over and deliver to such child his trust share, together with any accumulated income and the trust as to such share shall thereupon terminate.

C) Should any of my children die prior to attaining the age of twenty-five (25) years and leave no child or children surviving them, such child's trust share shall be divided equally among my other children, but if any of them are then under twenty-five years of age, his or her portion shall be added to his or her trust share to be continued in trust until such child attains the age of twenty-five years, but if no child or children of a deceased child survive, then the trust share of such deceased child shall be added to and become a part of the trust estate herein created for my wife, Virginia Husson Farah. If, however, any child of mine shall die prior to attaining the age of twenty-five years and leave a child or children surviving, then the trust share of my deceased child shall be divided into equal portions for each of such surviving grandchildren and shall continue to be administered in trust by my Trustee until such grandchild or grandchildren attain the age of twenty-one (21) years, whereupon the Trustee shall deliver to the respective beneficiary of each grandchild's trust his or her share of the trust assets and the trust shall thereupon terminate as to such share.

D) Should my wife and my children all predecease me, without issue surviving, or should we all meet our death as a

result of injuries received in a common disaster or calamity, or should they die prior to the appointment of an executor of my estate, then all of the remainder of my estate and property shall be held in trust by my Trustee herein appointed for the use and benefit of the surviving children of WILLIAM F. FARAH, my brother, and the trust share for each of his children shall be administered on the same terms and conditions as shall apply to the trusts herein created for my own children.

Paragraph D is the only place the appellants are mentioned in the will and trust, and none of the contingencies listed there have occurred.

Prior to hearing on the parties' respective motions for summary judgment, the appellants and the appellees filed the following stipulation of facts:

"1. On January 30, 1974,[1] James Farah died testate in El Paso, El Paso County, Texas. A true and correct copy of the Last Will and Testament of James Farah is attached hereto as Exhibit A and referred to herein as the 'James Farah Will'. The James Farah Will was admitted to probate in the County Court of El Paso County, Texas, and was valid in all respects.

"2. All assets of James Farah remaining after the specific bequests in paragraphs Second and Third of the James Farah Will were distributed under paragraph Fourth of that will to the trusts created thereunder.

"3. The estate of James Farah and the independent administration under the James Farah Will were both closed on or about July 31, 1975.

"4. At the time of his death, James Farah was lawfully married to Virginia H. Farah, a Defendant herein. There were two children born to that marriage, Frank N. Farah and Clifford James Farah. They were the only children of James Farah and both survived his death, as did Virginia H. Farah.

"5. Frank N. Farah died intestate on November 21, 1971. At the time of his death, Frank N. Farah was under the age of 25 years, unmarried and he had no surviving descendants. The only heirs of Frank N. Farah at the time of his death were Virginia H. Farah and Clifford James Farah.

"6. Clifford James Farah died testate on or about May 25, 1980. At the time of his death, Clifford James Farah was under the age of 25 years and he was not survived by wife or descendant. A true and correct copy of the Last Will and Testament of Clifford James Farah is attached hereto as Exhibit B and referred to herein as the Clifford Farah Will. The Clifford Farah Will is valid and has been admitted to probate in El Paso County, Texas.

"7. On or about August 9, 1979, The First National Bank of Fort Worth was appointed successor trustee of the trusts created by the James Farah Will pursuant to an order entered in Civil Action No. EP–77–CA–236 in the United States District Court for the Western District of Texas, El Paso Division, and said Defendant has served continuously as such trustee since receipt of the trust assets pursuant to that order.

"8. The James Farah Will *does not provide* for ultimate disposition of the residuary estate of the testator which passed into the trusts created in paragraph Fourth of that will where:

"a. No child of James Farah attained the age of 25 years; and

"b. No child of a deceased child of James Farah attained the age of 21 years; and

"c. Virginia H. Farah survived all the children and descendants of children born to or adopted by James Farah.

"9. Plaintiffs, Robert Norman Farah, James Clifton Farah, Kenneth Duane Farah, and Haleen Farah are the only children of William F. Farah, the brother of James Farah.

---

1. The parties agree that 1964 was the year of death, and that the references to 1974 in the stipulation filed in court is a typographical error.

"This stipulation is made solely for the purpose of determining the motions hereinabove identified, and for no other purpose." (Emphasis supplied.)

In response to the appellants' motion for partial summary judgment, appellee Virginia Farah filed a counterclaim. She alleged the (1) deaths of her two sons under circumstances that would merge their trust shares with her own; (2) that the remainder of her life estate is an asset of James Farah's estate that was not disposed of by his will; (3) that James Farah's interest in that remainder should be deemed to have passed by intestate succession to the persons who were his heirs-at-law *on the date of his death* ; (4) that she and her sons were the only such heirs at that date; (5) that the appellants therefore have no right to receive any of the remainder when her life estate terminates; and (6) that she is entitled to a declaratory judgment which construes James Farah's Will in accord with the allegations of her counterclaim.

Appellee Virginia Farah also moved for summary judgment on her counterclaim. Conditioned upon Virginia's motion being granted, the trustee bank sought summary judgment that, as to the bank, appellants take nothing.

The motions of Virginia and the bank were granted. The summary judgment was that the remainder from Virginia's life estate in the trust was part of James Farah's estate; it was not disposed of by his will; he died intestate as to that remainder; the remainder passed to James Farah's heirs-at-law, determined as of the date of his death; and the appellants were not such heirs on that date.

The trial court proceedings began and ended in 1980, and are governed by Rule 166–A, Tex.R.Civ.P. (1978).

Our inquiry under that rule is whether the summary judgment proof established that there was no genuine issue as to any material fact, and that the movants were entitled to judgment as a matter of law on the issues as set out in the motions or response thereto.

Initially, we note that the parties have stipulated the facts they deem material to their controversy.

The stipulations are not certified by the trial court, and the summary judgment recites that matters other than the stipulations were considered by the court. Therefore the stipulations did not amount to submission of an agreed case under Tex.R. Civ.P. Rule 236; *American Nat. Ins. Co. v. Briones,* 570 S.W.2d 574 (Tex.Civ.App.— Corpus Christi 1978, no writ); *Parsons v. Watley,* 492 S.W.2d 61 (Tex.Civ.App.—Eastland 1973, no writ).

An essential difference between an ordinary stipulation and submission on an agreed statement of facts is that the ordinary stipulation permits the trial court to make any findings and indulge in any inferences supported by the evidence. *Parsons v. Watley, supra; Beddall v. Reader's Wholesale Distributors, Inc.,* 408 S.W.2d 237 (Tex.Civ.App.—Houston 1966, no writ); *Perry v. Aetna Life Insurance Company of* Conn., 380 S.W.2d 868 (Tex.Civ.App.—Tyler 1964, writ ref'd n.r.e.).

Among the evidence in this case is the last will and testament of James Farah. The court must ascertain the testator's intent from within the four corners of that will. Neither the trial nor appellate courts have authority to redraft a will to conform it to the court's perception of the testator's *unexpressed* intent. *Huffman v. Huffman,* 161 Tex. 267, 339 S.W.2d 885 (1960).

Appellants complain that the trial court's denial of their motion for partial summary judgment denied them the right to present extrinsic evidence as proof that the testator intended them to be his ultimate beneficiaries where neither Virginia's sons nor their issue survive her.

In support of their argument, appellants cite *Aberg v. First National Bank in Dallas,* 450 S.W.2d 403 (Tex.Civ.App.—Dallas 1970, writ ref'd n.r.e.) and *Burton v. King,* 459 S.W.2d 663 (Tex.Civ.App.—Tyler 1970, writ ref'd n.r.e.). Those cases, however, are distinguishable, because in each the court was asked to construe specific wording that was

ambiguous or confusing; and to explain what each testator really meant by the words he used, extrinsic evidence was properly admissible.

■ In the case at bar, appellants want the court to supply an alleged *omission* in the will by allowing extrinsic evidence to supply a bequest that does not otherwise exist.

As Justice Greenhill stated in *Huffman, supra,* 339 S.W.2d at 888, "The intent must be drawn from the will, not the will from the intent. The rule of law applicable here is expressed in Page on Wills:

> 'In determining the testator's intention, the true purpose of the inquiry is to ascertain not what he meant to express apart from the language used, but what the words he has used do express. Accordingly, when there is no dispute as to what words were written in the will, it is a fundamental principle that extrinsic evidence cannot be received to show that the testator intended something outside of, and independent of such written words, to add words to those in the will, . . . .' 4 Page on Wills (Lifetime Ed.), 622 et seq., § 1617."

See also *Dalrymple v. Moss,* 611 S.W.2d 938 (Tex.Civ.App.—Tyler 1981, no writ); *Price v. Austin National Bank,* 522 S.W.2d 725 (Tex.Civ.App.—Austin 1975, writ ref'd n.r.e.) and *In re Estate of Kirby,* 516 S.W.2d 284 (Tex.Civ.App.—Waco 1974, writ ref'd n.r.e.).

"An ambiguity arises only when the meaning arising from language used admits of more than one interpretation." *Price supra,* 522 S.W.2d, at 732. We conclude that there is no ambiguity in the words of James Farah's will, and, therefore, its words are not subject to interpretation.

Neither are there any inconsistencies in the existing provisions of the will, although the appellants argue that to omit them from the will in the existing circumstances is inconsistent with the intention that the testator's will expresses for other circumstances.

Appellants reason that since they were named ultimate beneficiaries in several contingent circumstances (will, paragraph D), we should hold that the testator also intended them to be beneficiaries in other contingent circumstances he did not set forth in his will.

We lack that authority.

■ The trial court was correct in its judgment that, as a matter of law, the evidence shows that the remainder from Virginia Farah's life estate was part of James Farah's estate and was not disposed of by his will.

In Tex.Rev.Civ.Stat.Ann., The Texas Trust Act, art. 7425b–44 (1960) provides:

> "Where an express trust is created in relation to real or personal property, every estate not embraced in the trust, and not otherwise disposed of, *is left in the trustor* of the trust or his legal successors in title." (Emphasis supplied.)

James Farah's will creates express trusts. The parties have stipulated that the will is silent as to the disposition of the remainder in the circumstances that exist (stipulation no. 8). That remainder, therefore, is an estate not embraced in, or disposed of by, the trust. That remainder interest was thus left in James Farah.

The trusts were created by the will's residuary clause. After specific bequests, all the rest of James Farah's property went into the trusts, with various instructions for its disposition. The trusts contain no provision, however, as to what is to become of the remainder from Virginia's life estate in the existing situation, where the sons do not survive her, and their shares have already merged with hers.

"While it is true that a construction that results in partial intestacy is not favored in the law, it is equally true that such rule must yield to a construction resulting in partial intestacy where the testator has failed, through design or otherwise, to make a complete disposition of his property." *Sowell v. Heins,* 466 S.W.2d 862, 865 (Tex.Civ. App.—Dallas 1971, writ ref'd n.r.e.).

However strong the presumption against intestacy may be, it does not authorize the court to make a new will or include property that is not within its terms. *Swearingen v. Giles*, 565 S.W.2d 574 (Tex. Civ.App.—Eastland 1978, writ ref'd n.r.e.); *Neinast v. Brauckmuller*, 401 S.W.2d 113 (Tex.Civ.App.—Houston 1966, no writ).

Intestacy is a condition that either exists at time of death or not at all. If it is now determined that James Farah died partially intestate, because of an omission in his will, then we must deem such intestacy to have existed when he died. It would not be a condition later acquired.

We could speculate that James Farah now might wish the appellants to take his property upon Virginia's death. Conversely, we could speculate that his omission to specify that result was merely because he never imagined both of his sons predeceasing Virginia without having attained age twenty-five and without issue; and that if he had, he would have directed a disposition different than that now sought by appellants.

There is no way for us to be certain that our own conjectures would match the testator's unexpressed intent.

Since the residuary clause does not dispose of the remainder from Virginia's life estate, it was still an asset of James Farah's estate when he died.

We do not believe that the will's creation of testamentary trusts softens the impact of the partial failure of the residuary clause. When a residuary clause fails, whether in whole or part, the property as to which it fails passes by intestacy, under the laws of descent and distribution. *Sellers v. Powers*, 426 S.W.2d 533 (Tex.1968).

Accordingly, we conclude that the trial court was correct in holding that James Farah died intestate as to the remainder interest. Art. 7425b–44; *Haile v. Holtzclaw*, 414 S.W.2d 916 (Tex.1967); *Carr v. Rogers*, 383 S.W.2d 383 (Tex.1964); *Fain v. Fain*, 335 S.W.2d 663 (Tex.Civ.App.—Fort Worth 1960, writ ref'd); *Casey v. Kelley*, 185 S.W.2d 492 (Tex.Civ.App.—Fort Worth 1945, writ ref'd).

In view of the partial intestacy, the question narrows to that of determining the date on which James Farah's heirs-at-law are to be ascertained. That date will establish the persons qualified to receive his intestate property.

Appellants say the controlling date will be when Virginia's life estate terminates. They argue, of course, that there was no intestacy and that we simply have a situation in which James Farah's *entire* estate is in a trust that will fail when Virginia dies, since their sons do not survive nor did they leave issue surviving.

Appellants contend that on the date the trust fails, its corpus and remainder must pass to those persons who will be James Farah's heirs-at-law on that date. The appellants claim in that category.

Finding no reported Texas cases supporting their argument, appellants ask us to follow *Dennis v. Omaha Nat. Bank*, 153 Neb. 865, 46 N.W.2d 606 (1951). That case is distinguishable, however, since the testator there made a *complete* disposition of his estate, by will, into a trust. When the trust eventually failed, the court implied a *resulting* trust of the remainder for the benefit of persons who were the testator's heirs *on the date the trust failed*. The difference is that here we have a partial intestacy. We believe the disposition must conform to Tex. Prob.Code Ann. § 37 (1980), which states:

"When a person dies, leaving a lawful will, . . . all the estate of such person, not devised or bequeathed, *shall vest immediately in his heirs at law*; . . . ."

(Emphasis supplied.)

The law favors a construction that permits the earliest possible vesting of an estate. *Pickering v. Miles*, 477 S.W.2d 267 (Tex.1972); *Rekdahl v. Long*, 417 S.W.2d 387 (Tex.1967); *Lewis v. Martel*, 339 S.W.2d 924 (Tex.Civ.App.—Waco 1960, writ ref'd n.r.e.).

When James Farah's will failed to dispose of the entire estate and left a partial intestacy, that portion of the estate not disposed of by the will vested *immediately*

in those persons who were the testator's heirs-at-law at the date of his death. *Sellers v. Powers, supra; Sowell v. Heins, supra.* The trial court was correct in so holding.

To hold otherwise would leave the intestate property floating in a state of suspended animation from 1964, until some distant future time when the trust terminates and claimants then step forward.

We conclude that as a matter of law the summary judgment proof established that there was no genuine issue as to any material fact, and the appellees were entitled to the summary judgment granted. *Farley v. Prudential Insurance Company,* 480 S.W.2d 176 (Tex.1972); *Gibbs v. General Motors Corporation,* 450 S.W.2d 827 (Tex.1970).

Each of appellant's points of error are overruled, and judgment of the trial court is affirmed.