OPINION
 

 LEVY, Justice.
 

 This is an appeal from an order construing a will. The trial court’s judgment is affirmed.
 

 Louise Mclver died on December 26, 1976. She had executed a will on October 29, 1976, which revoked all prior wills and appointed appellant, her nephew, as independent executor of her estate. On February 1, 1977, an order was signed admitting the will to probate, and appellant filed an application with the probate court on July 23, 1982, asking that the court enter a declaratory judgment construing the testamentary provisions of the will.
 

 A bench trial was held on the application, and the court entered an order construing the will. The court held,
 
 inter alia,
 
 that the testatrix died testate only as to her personal property and that she died intestate as to her real property, except for her homestead, which was specifically bequeathed to her sister in Article VII of her will.
 

 Appellant filed a motion for a new trial, alleging discovery of new evidence which would require a different construction of the will. A hearing was held thereon, and the trial court overruled appellant’s motion for new trial. Appellant ■ brings seven points of error before the court. Appel-lees, the heirs of the testatrix, bring one cross-point.
 

 In his first four points of error, appellant challenges the trial court’s conclusions of law and its construction of the will. The trial court’s conclusions of law are as follows:
 

 1. Under the terms of her will dated October 29, 1976, Louise Mclver died testate only as to her personal effects and personal property, which passed to the named persons in the percentages stated in Paragraph VI in said will and the real property described in Paragraph VII in said will.
 

 
 *664
 
 2. Louise Melver died intestate as to all real property which she owned, in whole or in part, save and except only that described in Paragraph VII in her will dated October 29, 1976, and all such real property, or interest therein, owned by the decedent passed to her heirs at law by intestate succession.
 

 In his first point of error, appellant alleges that the trial court erred in ruling that Louise Melver died testate only as to her personal property and her homestead. The only bequests occur in Articles IV, VI and VII. Article IV of the will directs the executor to distribute the testatrix’s “personal effects” among the relatives listed in Article VI. Article VII specifically gives the testatrix’s homestead to her sister. This is the only real estate mentioned in the will, and there is no residuary clause. In appellant’s second point, he alleges that the trial court erred in ruling that Article IV of the will disposed only of Louise Mclver’s personal property. In his fourth point, he alleges that the trial court erred in failing to find that the term “personal effects” in Article IV of the will included all of Louise Mclver’s property not otherwise specifically bequeathed. Appellant argues that the will disposes of all of Louise Mclver’s property as a matter of law, and that the trial court’s construction of the will is against the great weight and preponderance of the evidence.
 

 At the outset, we are faced with the problem of construing the phrase “personal effects.” Appellant argues that “personal effects” should include all property, including personalty and realty. However, “personal effects” has customarily been defined more narrowly as referring only to articles bearing intimate relation or association to the person of the testator.
 
 Teaff v. Ritchey,
 
 622 S.W.2d 589 (Tex.App.-Amarillo 1981, no writ);
 
 First Methodist Episcopal Church South v. Anderson,
 
 110 S.W.2d 1177 (Tex.Civ.App.-Dallas 1937, writ dism’d);
 
 see also Goggans v. Simmons,
 
 319 S.W.2d 442 (Tex.Civ.App.-Fort Worth 1958, writ ref’d n.r.e.)
 

 The trial court interpreted “personal effects” to exclude real property, but appellant argues that this interpretation is against the great weight and preponderance of the evidence. In a “great weight” point of error, this court must examine all the evidence in the record relevant to the finding being challenged.
 
 In re King’s Estate,
 
 150 Tex. 662, 244 S.W.2d 660 (1951).
 

 A will is a unilateral instrument, and the court is concerned only with the intention of the testator as expressed in the document. The sense in which the words were used
 
 by the testator
 
 is the ultimate criterion, and the court may always receive and consider evidence concerning the situation of the testator, the circumstances existing when the will was executed, and other material facts that will enable the court to place itself in the testator’s position at the time.
 
 Stewart v. Selder,
 
 473 S.W.2d 3 (Tex.1971). However, the intention of the testator must be ascertained from the language used within the four corners of the instrument.
 
 Shriner’s Hospital v. Stahl,
 
 610 S.W.2d 147, 151 (Tex.1980). The question is not primarily what the testator intended to write, but the meaning of the words he actually used.
 
 Id.
 
 at 151.
 

 A careful examination of the testatrix’s background, as shown by the record, reveals that she knew the difference between various terms such as real property, personal property, and personal effects. She worked in the Harris County Clerk’s office for 31 years, and for 15 years she was the department head of the Real Property Document Recording Section. Appellees presented testimony from two of the testatrix’s former co-workers. One witness testified that she knew the deceased from 1959 to 1966. Her opinion was that the testatrix was “a jack of all trades in that office, because she knew it like she knew the back of her hand.” Furthermore, the witness stated that the testatrix definitely knew the difference between real property, real estate, personal property, and personal effects at that time, as she dealt with in
 
 *665
 
 struments covering such areas in connection with her work.
 

 Appellant argues that the testimony of the testatrix’s sister, Katherine Openshaw, establishes that “personal effects” in the testatrix’s will referred to real estate as well as personal property. Openshaw testified that the testatrix had told her that she would leave her entire estate to her nieces and nephews, and nothing to Openshaw because she had her own property. She also testified that the list of names under Article VI of the will specified the testatrix’s nieces and nephews.
 

 Another witness, Carl S. Smith, County Tax Assessor-Collector, testified that he knew the testatrix very well during her employment at the county clerk’s office. He was of the opinion that she was a good deputy, and certainly knowledgeable in her job. Smith testified that he believed that the testatrix had personal knowledge of certain terms such as personal property, real property, personal effects, and household effects.
 

 Appellees also presented testimony from a law school graduate who had done a “run of the records” in the Harris County Clerk’s office. The witness testified that between 1961 and 1976, the testatrix was involved in approximately 74 different transactions which were recorded in the Harris County deed records. These transactions included warranty deeds, easements, releases, deeds of trust, quitclaim deeds, affidavits, and assignments regarding real estate.
 

 Based on the testimony presented regarding the extent of the testatrix’s knowledge of real estate transactions, both from work and her own personal involvement, it does not appear reasonable to define “personal effects,” as she used the phrase in her will, to include real property. The intention of a testator must be found, in the last analysis, in the words of the will, and for that reason, a testator’s other and external declarations of intention dealing with the subject of the special document are generally not admissible. These declarations may be received only as an aid in resolving certain specific problems of interpretation, such as an equivocation, or latent ambiguity.
 
 Stewart,
 
 473 S.W.2d at 7.
 

 The trial court found that the testatrix “was knowledgeable of and understood the legal interpretation and meaning of such words as personal effects, personal property, real estate and real property.” This finding is not against the great weight of the evidence. Having found that the testatrix understood the use of the words “personal effects,” the trial court was faced with the interpretation of a will which apparently did not provide for the distribution of most of the testatrix’s real property.
 

 The mere making of a will is evidence that a testator had no intent to die intestate, and creates a presumption that the testator intended to dispose of his entire estate, and that he did not intend to die intestate as to the whole or any part of his property.
 
 Shriner’s Hospital,
 
 610 S.W.2d at 151;
 
 Haile v. Holtzclaw,
 
 414 S.W.2d 916, 922 (Tex.1967). Appellant argues that this presumption applies in the instant case, and that Article II, which states that the testatrix intended to dispose of all property owned by her at the time of her death, supports this position. It is highly inconsistent, appellant argues, that Article IV be literally construed to mean that only the testatrix’s personal effects pass by her will. If it is interpreted as such, all of the testatrix’s real property except for her homestead, which was specifically bequeathed, would pass according to the intestacy statute, to her heirs at law. The record in the case contains an inventory of the testatrix’s estate, and listed among the real property are some 13 items besides her homestead, totaling in value over $500,000.
 

 The presumption against intestacy is one factor to be considered in determining the intention of a testator, but it is not to be used as an excuse for violating the testamentary scheme adopted by him.
 
 Stewart,
 
 473 S.W.2d at 8;
 
 Carr v. Rogers,
 
 383 S.W.2d 383, 385 (Tex.1964);
 
 Huffman v. Huffman,
 
 161 Tex. 267, 339 S.W.2d 885
 
 *666
 
 (1960). When a will provision is fairly open to more than one construction, a construction resulting in intestacy, either in whole or in part, will not be adopted if by any
 
 reasonable
 
 construction it can be avoided.
 
 Kuehn v. Bremer,
 
 132 S.W.2d 295 (Tex.Civ.App.-Waco 1939, writ ref’d);
 
 Ferguson v. Ferguson,
 
 121 Tex. 119, 45 S.W.2d 1096 (1931).
 

 When a will contains a general provision and an inconsistent specific provision, the latter provision will control regardless of the position in which the provisions appear in the will. However, if there is an irreconcilable conflict in an earlier and a later clause, the earlier clause must give way to the later one, which prevails as the latest expression of the testator’s intention on that particular subject.
 
 Morriss v. Pickett,
 
 503 S.W.2d 344 (Tex.Civ.App.-San Antonio 1973, writ ref’d n.r.e.).
 

 While the intention of the testator must be ascertained from the words of the instrument itself,
 
 Shriner’s Hospital,
 
 610 S.W.2d at 151, where a testator fails to provide for the complete disposition of all of his property, whether by intent or not, it must be held that the testator dies intestate as to such omitted property.
 
 Carr,
 
 383 S.W.2d at 385. Because the testatrix did not provide for the distribution of her real property other than her homestead, the trial court correctly found that she died partially intestate. Appellant’s points of error number one, two, and four are overruled.
 

 In his third point of error, appellant alleges that the trial court erred in failing to find that residuary estate disposition language was mistakenly omitted from Article VI of the will.
 

 Katherine Openshaw testified that she had discussed the will with her sister and that they wrote the will together. She also testified that she prepared the testatrix’s will and that she had gotten “some of the verbiage” for it from her own will. She revealed that in Article IV of the testatrix’s original will there is a “white-out,” and the words “personal effects” were typed in over the words which were whited-out. Openshaw was not able to state what words must have been whited-out. However, appellant also introduced into evidence the second page of Katherine Open-shaw’s will, which she claimed to have copied for the testatrix. It appears that the testatrix changed the words "foregoing property” from Openshaw’s will to the words “personal effects” in her own will.
 

 Ben Sewell, a Houston attorney who prepared the Openshaw will in 1974, testified that Article VI of the testatrix’s will was apparently adapted from Article VII of the Openshaw will. He further testified that Article VII of the Openshaw will contained a residuary clause. When comparing the two articles, he observed that there was no residuary clause language in the testatrix’s will. Sewell further observed that, in his opinion, the testatrix’s will was ambiguous, and that the testatrix had apparently overlooked including in her own will the residuary clause language from the Openshaw will. He further explained that the Open-shaw will was very complicated and thus, it would have been very difficult for a layman to pick up the reference therein to the residuary estate. Appellant argues that the trial court erred in failing to find the residuary language was omitted by mistake.
 

 Appellant asserts that, because Article VI of the will is ambiguous and open to two constructions, the interpretation that will prevent intestacy must be utilized.
 
 Shriner’s Hospital,
 
 610 S.W.2d at 151. But the alleged alternative construction of the will is not apparent on its face, and we must give the words of the will their normal meaning, in light of the testatrix’s intentions.
 

 An ambiguity in a will has been said to exist only when the meaning arising from the language used admits of more than one reasonable interpretation.
 
 Farah v. First National Bank,
 
 624 S.W.2d 341, 346 (Tex.App.-Fort Worth 1981, writ ref’d n.r.e.);
 
 Price v. Austin National Bank,
 
 522 S.W.2d 725, 732 (Tex.Civ.App.-Austin 1975, writ ref’d n.r.e.). Appellant argues
 
 *667
 
 that Sewell’s testimony establishes that Article VI of the Mclver will, as written, is ambiguous, and that this court should, as a result, hold that the testatrix mistakenly left out the residuary clause language. However, Article IV specifically says that the testatrix’s personal effects are to go to the people named in Article VI, in the proportions listed for each. Therefore, reading Article VI in context with the provisions of Article IV, any ambiguity is resolved. The only properties covered by these provisions are the testatrix’s “personal effects.”
 

 In determining the testatrix’s intention, the true purpose of the inquiry is to ascertain not what she meant to express apart from the language used, but what the words she has used do express. Accordingly, when there is no dispute as to what words were written in the will, extrinsic evidence cannot be received to show that the testatrix intended
 
 something,
 
 outside of and independent of such written words, to add to those words in the will.
 
 Farah,
 
 624 S.W.2d at 346;
 
 Price,
 
 522 S.W.2d at 732. The trial court must ascertain a testator’s intent from within the four corners of the will. A mistake of fact or law, in the absence of fraud or undue influence, will not defeat the probate of a will, even though the testator might have made a different will if there had been no such mistake inducing the testator to make the will. Courts have no authority to vary or modify the terms of a will or to reform it even on grounds of mistake.
 
 Carpenter v. Tinney,
 
 420 S.W.2d 241, 244 (Tex.Civ.App.-Austin 1967, no writ). Neither trial nor appellate courts have the authority to redraft a will to conform it to the court’s perception of the testator’s unexpressed intent.
 
 Farah,
 
 624 S.W.2d at 345;
 
 Huffman,
 
 161 Tex. at 270, 339 S.W.2d at 888.
 

 The law does not favor a construction that results in a partial intestacy. However strong the presumption against intestacy is, it does not authorize the court to make a new will, nor to include property that is not within its terms, nor to supply a residuary clause when one was not included.
 
 Farah,
 
 624 S.W.2d at 347;
 
 Swearingen v. Giles,
 
 565 S.W.2d 574 (Tex.Civ.App.-Eastland 1978, writ ref’d n.r.e.);
 
 Alexander v. Botsford,
 
 439 S.W.2d 414 (Tex.Civ.App.-Dallas 1969, writ ref’d n.r.e.).
 

 Thus, while it appears that Se-well’s testimony is competent to show what
 
 he
 
 thought the testatrix intended to do, it is not competent to show what the testatrix’s actual intent was, as expressed in the will. Appellant’s third point of error is overruled.
 

 Appellant argues, in his fifth and sixth points of error, that the trial court erred in admitting into evidence, and considering for its ruling, a purported 1960 holographic will of the testatrix. Appellant objected to the admission of this exhibit on the grounds that it was irrelevant and that it had not been properly authenticated. The court overruled his objections and admitted the exhibit into evidence.
 

 Appellant correctly argues that the proper predicate had not been laid for the admission of the exhibit. A private writing must be proved to be genuine before it can be admitted into evidence, especially when it is offered against a person not a party to the writing.
 
 Morris v. Ratliff,
 
 291 S.W.2d 418 (Tex.Civ.App.-Dallas 1956, writ ref’d n.r.e.). The record reveals that no attempt was made to authenticate the purported holographic will in any way prior to its admission. Moreover, the probate code sets forth the requirements of validating .a holographic will. Tex.Prob. Code Ann. sec. 84(b) (Vernon 1980). A holographic instrument offered for probate must be wholly in the handwriting of the decedent, and such burden of proof may be met by evidence of two witnesses to the handwriting of the decedent.
 
 Gillispie v. Reinhardt,
 
 596 S.W.2d 558 (Tex.Civ.App.-Beaumont 1980, writ ref’d n.r.e.). A revoked will cannot be admitted to probate.
 
 Davis v. Hoskins,
 
 531 S.W.2d 424 (Tex.Civ.App.- Fort Worth 1975, no writ);
 
 Shawver v. Parks,
 
 239 S.W.2d 188 (Tex.Civ.App.—Eastland 1951, writ ref’d).
 

 
 *668
 
 However, it is important to note that this will was not the will being, or sought to be, probated. It appears to have been admitted only to show the testatrix’s prior intent to die partially intestate, although it was not admitted for a limited purpose. The admission of incompetent evidence will not generally require a reversal of the judgment in a trial before the court when there is other competent evidence to authorize the judgment, and it will ordinarily be assumed that the trial court disregards incompetent evidence.
 
 Merrell v. Merrell,
 
 527 S.W.2d 250 (Tex.Civ.App.-Tyler 1975, writ ref’d n.r.e.). An appellate court must assume, upon appeal of a case heard before the court without a jury, that such court considered only admissible evidence.
 
 Red Jacket Manufacturing Co. v. Adams,
 
 346 S.W.2d 897 (Tex.Civ.App.-El Paso 1961, writ ref’d n.r.e.). Because there was other sufficient and competent evidence to show that the testatrix died intestate as to her real property, the error, if any, is harmless. Tex.R.Civ.P. 434. In passing on the sufficiency of the evidence to support the trial court’s findings, we will view the evidence in a light most favorable to such findings, and will presume that the trial court did not consider any improper evidence.
 
 Martin v. Taggart,
 
 311 S.W.2d 749 (Tex.Civ.App.-Eastland 1958, no writ). Appellant’s fifth and sixth points of error are overruled.
 

 Appellant complains in his seventh point of error of the trial court’s consideration of the testimony of four witnesses presented by the appellees. The witnesses were two of the testatrix’s co-workers, the law graduate who searched the records, and the testatrix’s niece, Mrs. Gleason, who testified that the testatrix knew her job well. She also testified that she saw no difference in her aunt’s knowledge and attitudes in the spring of 1976, when she last spoke with her aunt.
 

 Appellant argues that the four witnesses’ testimony was incompetent to show any evidence of the testatrix’s knowledge in 1976 of the meaning of various technical words such as “personal effects,” “personal property,” and “real estate.” Appellant particularly points to the fact that both of the testatrix’s former co-workers had little or no contact with her after her retirement, and that both of them testified to the fact that neither was ever her supervisor. It is appellant’s contention that the remoteness in time of the witnesses’ contact with the deceased disqualifies their testimony as to the testatrix’s knowledge and intent at the later date when she executed her will.
 

 The testimony of the niece and of the law school graduate was relevant to show the extent of the testatrix’s knowledge of transactions involving real property. The niece testified about her aunt’s testamentary capacity, and this was admissible to show that the testatrix knew as much, immediately prior to her death, as when she worked for the Harris County Clerk’s office.
 

 The law graduate’s testimony showed the extensive involvement the testatrix had in the real estate market. This is supported by the fact that she owned some 13 various pieces of property at her death, and is competent to show her knowledge of the terminology used in the field.
 

 Appellant’s challenge to the remoteness of the two co-worker’s testimony would have gone only to the weight of the testimony, not to its admissibility. Extrinsic evidence is admissible on the state of a testator’s family, on the status of his property, and as to other circumstances relating to him individually and to his affairs, to enable the court to determine the testator’s meaning in his use of language in his testamentary instrument.
 
 Anderson v. Dubel,
 
 580 S.W.2d 404 (Tex.Civ.App.-San Antonio 1979, writ ref’d n.r.e.);
 
 see generally Federal Land Bank v. Little,
 
 130 Tex. 173, 107 S.W.2d 374 (1937). Appellees, through the testimony of the two co-workers, showed the extent of the testatrix’s knowledge as to various technical terms. Even though the two co-workers were not in touch with the testatrix after her retirement, their testimony related to her knowledge between her retirement and her death, demonstrating both her testamenta
 
 *669
 
 ry capacity at a later age and the extent of her involvement in recordable transactions. The trial court did not err in considering this testimony; appellant’s seventh point of error is overruled.
 

 We overrule appellees’ sole cross-point, which urges that the appellant’s appeal is frivolous and that attorney’s fees should be awarded appellees.
 

 The judgment of the trial court is affirmed.