Linda Louise Witte KNESEK, et
al., Appellants,

v.

Bonnie Sue WITTE, et al., Appellees.

No. 01–85–0737–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 7, 1986.
Rehearing Denied Sept. 4, 1986.

Richard Nuffer, Brenham, for appellants.

John B. Benton and Danny H. Dishongh, Benton & Dishongh, P.C., Houston, for appellees.

Before EVANS, C.J., and JACK SMITH and WARREN, JJ.

## OPINION

JACK SMITH, Justice.

This is an appeal from a judgment, based on a jury verdict, construing a will. In one point of error, appellants maintain that they were entitled to judgment as a matter of law; appellees bring two cross-points.

Louise Witte ("Louise") was married to Roland Hoffmann ("Hoffmann") until his death in July, 1977. During their marriage, Louise owned an undivided ¼ interest in 44 acres of land, and Hoffmann owned the remaining undivided ¾ interest in the same property. In 1975, Louise and Hoffmann executed reciprocal wills. Each left all of his/her property to the other. The wills further provided that if Hoffmann predeceased her, Louise left her property to his nieces and nephews and one of her nieces; conversely, if Louise predeceased him, Hoffmann left his property to the same persons.

Louise survived Hoffmann, and under his will, inherited his entire estate including his undivided ¾ interest in the 44 acres of land. (The property Louise inherited from Hoffmann will be referred to as "Hoffmann's property;" the entire 44 acres will be referred to as "the property.")

After Hoffmann's death, Louise remarried and, in 1978, she executed a second will, followed by a third will, which she executed in 1980. It is the 1980 will that was admitted to probate and construed in the court below.

After the 1980 will was admitted to probate, appellees (Hoffmann's nieces and nephews) brought suit for a declaratory judgment. They maintained that Louise's 1975 will was executed pursuant to an agreement between Louise and Hoffmann, and asked the court to impose a constructive trust upon the estate assets. In the alternative, appellees requested the court to construe Louise's will so as to devise Hoffmann's property to his nieces and nephews.

Appellants (Louise's nieces and nephews) responded with a general denial, and repeatedly moved for judgment as a matter of law. The trial court first overruled appellants' motion for summary judgment. Then, after each party had presented its case, the trial court overruled appellants' motions for a directed verdict and instructed verdict. The trial court also refused to submit appellants' requested special issue regarding contractual wills, and submitted the following special issue instead:

> Do you find from a preponderance of the evidence that Louise Witte, by her will dated May 9, 1980, intended to leave the real property inherited from Roland Hoffmann to Roland Hoffmann's nieces and nephews?

The jury answered "yes" to the special issue. Appellants then moved for judgment n.o.v., which the trial court denied.

In one point of error, appellants contend that the trial court erred in failing to rule as a matter of law that appellees were not beneficiaries under the 1980 will. Appellants maintain that the will is not ambiguous, and that the trial court erred in permitting the jury to consider extrinsic evidence. They also assert that the jury's construction was contrary to law because the will included no words of devise to Hoffmann's nieces and nephews.

Appellees reply that any error was waived because 1) appellants' point of error on appeal is multifarious, 2) it fails to identify any specific acts of the trial court alleged to be error, and 3) appellants failed to object to the issue submitted to the jury.

We find the point of error sufficiently clear to raise the issue of whether appellants were entitled to judgment as a matter of law.

We also find that the following objection, made prior to submission of the special issue to the jury, adequately preserved the point for appeal:

> That is an issue for the Court. The Court, I know, can ask the jury as to the intention of the testate at the time of making this will, but frankly, Judge, I don't think we have heard any evidence as to her intention other than what is set forth in the will itself.

The pertinent portions of Louise's will provided that:

### ARTICLE III

(B) All the rest and residue of my estate, including but not limited to all of my interest in real property in the James Cummins Hacienda, Abstract 31 Austin County, Texas, County, Texas, [the property] which is my separate property, in equal shares of [sic] those of the following named individuals, who are my nieces and nephews, who survive me:

[26 names including appellants but not including appellees]

[(c)] Under the Last Will and Testament of my late husband, Roland Hoffmann, duly probated in Austin County, Texas, I did receive [sic] *certain life estate interest in a portion of property owned by he and myself and a portion of property that was characterized as his separate property with the remainder interest in said property passing to certain of his nieces and nephews and it is my direction that my Independent Executrix accomplish partition of said property in such a way so that the devisees and legatees hereunder receive their share of such real property in a contiguous tract that is also contiguous to Schumann Road and that the remainder interest owners under my late husband Roland Hoffmann's Last Will and Testament receive their share of the*

*property with the improvements situated thereon, and including all such improvements and contiguous to South Tesch Street* but this provision shall not prevent or in any way take away the ability of my Independent Executrix, after such partition is accomplished, to sell and dispose of said real estate so division of my estate be made in cash. (emphasis added). [The designation "(c)" has been added for convenience of reference.]

The residuary clause appears to devise the property to appellants, but it is followed by a direction to the executrix to partition the same property between Louise's residuary devisees and Hoffmann's remaindermen.

The difficulty in construing this will arises for two reasons. First, Louise refers to her interest in Hoffmann's property as a "life estate," although it is undisputed that Louise owned the entire 44 acres (including Hoffmann's property) in fee simple at the time of her death. *See Bridges v. First National Bank*, 430 S.W.2d 376, 382 (Tex.Civ.App.—Dallas 1968, writ ref'd n.r. e.). Second, the only "direction" contained in the will is in Article III[c], directing that the executrix partition the property.

■ Appellants contend that the will must be construed without regard to the extraneous circumstances of the testator. We disagree. The intention of a testator must be ascertained from the meaning of the words in the instrument, and from those words alone; but, as she may be supposed to have used language with reference to the situation in which she was placed, to the state of her family, her property, and other circumstances relating to herself individually, and to her affairs, the law admits extrinsic evidence of those facts and circumstances. Consideration of these facts assists the court in determining the meaning attached by the testator to the words used in the will and aids in applying them to the particular facts in the case. *Houston Bank and Trust Co. v. Lansdowne*, 201 S.W.2d 834 (Tex.Civ.App.—Galveston 1947, writ ref'd n.r.e.). The sense in which words are used by the testator is the

ultimate criterion in will construction, and the court may always receive and consider evidence concerning the situation of the testator, the circumstances existing when the will was executed, and other material facts that will enable the court to place itself in the testator's position at the time. *Stewart v. Selder*, 473 S.W.2d 3, 7 (Tex. 1971).

■ The only extrinsic evidence considered by the jury concerned the circumstances surrounding the execution of the will and the situation of the testator. Regardless of whether the will was ambiguous, such evidence was properly considered to determine whether there was a latent ambiguity. *Seldler*, 473 S.W.2d at 7.

Appellants next argue that the jury did not construe Louise's will, but rather that it rewrote the will. Appellants propose that the language in Article III[c] establishes that 1) Louise was laboring under a mistake of fact about her interest in the property and about the "remainder interest" of Hoffmann's nieces and nephews, 2) the mistake of fact does not affect the validity of her will, and 3) the statements in the will based on her mistaken belief never made any devise and cannot be used to defeat the devise to Louise's nieces and nephews contained in the residuary clause.

■ We agree with appellants' contention, and find support in *Carpenter v. Tinney*, 420 S.W.2d 241 (Tex.Civ.App.—Austin 1967, no writ), and *Kaufhold v. McIver*, 682 S.W.2d 660 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). It matters not whether Louise was laboring under the belief that she had inherited a life estate from Hoffmann and that his nieces and nephews held the remainder interest in Hoffmann's property. Neither the trial court nor the jury were empowered to re-write Louise's will to make a devise to Hoffmann's nieces and nephews. The very purpose of requiring a will to be in writing is to enable the testator to place it beyond the power of others, after the testator's death, to change or add to a will. *Huffman v. Huffman*, 161 Tex. 267, 339 S.W.2d 885 (1960).

The only dispository provisions in Louise's will are found in Article III, which is composed of two subsections. Article III(a) makes a specific gift to Louise's second husband. Article III(b) is the residuary clause. The provision in question, denoted III[c] for convenience, merely directs the executrix to partition the property so that "the devisees and legatees hereunder" receive their share from a designated part of the property, and that "the remainder interest owners *under [her] late husband Roland Hoffman[n]'s Last Will and Testament*" receive their share from a different part. Because the nieces and nephews received nothing under Hoffmann's will, their share of the partition was reduced to nothing.

We hold that Louise's will did not make a valid testamentary disposition to Hoffmann's nieces and nephews. *First Methodist Church of Shiner v. Wright*, 706 S.W.2d 720 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.); *compare Alexander v. Botsford*, 439 S.W.2d 414 (Tex.Civ.App.—Dallas 1969, writ ref'd n.r.e.); *Huffman, v. Huffman*, 161 Tex. 267, 339 S.W.2d 885.

Appellants' point of error is sustained.

In their first cross-point, appellees contend that the trial court erred in excluding the following as hearsay: 1) Hoffmann's statement to witness Schumann that they (i.e. Louise and he) had made their wills, and that all of the property was going to go to [his nieces and nephews], and 2) Louise's statement to Mrs. Kloss that she intended to leave the property to Hoffmann's nieces and nephews. We review the trial court's rulings keeping in mind that reversible error may not be predicated on an evidentiary ruling unless a substantial right of the appellees was affected. Tex.R.Evid. 103(a).

 We first consider Louise's statement to Mrs. Kloss. This was an expression of the testatrix's intent offered to explain the disputed clause in the will. As the supreme court explained in *Stewart v. Selder*, 473 S.W.2d at 7:

The intention of the testator must be found, in the last analysis, in the words of the will, and for that reason his other declarations of intention dealing with the subject of the specific document are generally not admissible. These declarations may be received only as an aid in resolving certain specific problems of interpretation, such as equivocation or latent ambiguity.

An ambiguity arises only when the language used is susceptible of more than one interpretation. *Price v. Austin National Bank*, 522 S.W.2d 725 (Tex.Civ.App.—Austin 1975, writ ref'd n.r.e.). In sustaining appellants' point of error, we found that the meaning of the terms used was unambiguous. Thus, the trial court correctly excluded Louise's statements to Mrs. Kloss, albeit for the wrong reason.

 Hoffmann's statements were offered to show a contract for wills. They are not hearsay under rule 803(3) and are admissible to show an oral contract for wills. *Compare Pullen v. Russ*, 226 S.W.2d 876 (Tex.Civ.App.—Fort Worth 1950, writ ref'd n.r.e.). Once there has been part performance of the oral contract, such statements are not excludable merely because they are oral. *Kirk v. Beard*, 162 Tex. 144, 345 S.W.2d 267 (1961). The trial court improperly excluded Hoffmann's statements to Schumann, because it was evidence that should have been considered on the contractual wills issue which the court improperly refused to submit to the jury.

Appellees' first cross-point is sustained with regard to Hoffmann's statements and overruled with regard to Louise's statements.

In their second cross-point of error, appellees contend that the trial court erred in refusing their request to submit the following special issue to the jury:

Do you find from a preponderance of the evidence that Louise Hoffmann and Roland Hoffmann on the 29th day of September, 1975, executed their Wills pursuant to an agreement between them to

dispose of their property in the manner set out in such Wills?

Two parties may contract to make wills, so that once the first party has died, the other party is bound not to change his/her will. *Weidner v. Crowther*, 157 Tex. 240, 301 S.W.2d 621 (1957). Although wills may be revocable, an underlying irrevocable contract may control the disposition of the testator's property at his death. However, there must be more than a mere agreement to make reciprocal wills. The agreement must involve the assumption of an obligation to dispose of the property as there provided, or not to revoke such wills, which are to remain in force at the death of the testators. *Kastrin v. Janke*, 432 S.W.2d 539 (Tex.Civ.App.—El Paso 1968, writ ref'd n.r.e.).

Although the cases say that oral contracts to dispose of property by will are viewed with suspicion and are only sustained when established by *clear, satisfactory, and convincing evidence, Magids v. American Title Insurance Co.*, 473 S.W.2d 460, 464 (Tex.1971), a contractual agreement is often found in cases involving mutual wills by a husband and wife, even where there is little or no evidence that either intended to undertake a binding obligation. Bailey, *Contracts to Make Wills—Proof of Intent to Contract*, 40 Tex.L.Rev. 941, 949 (1962).

*Pullen v. Russ*, 226 S.W.2d 876 held that the similarity of the wills and the fact of execution at the same time and place and before the same witnesses are facts that may be considered along with other evidence in determining whether or not wills were executed pursuant to an agreement. In *Pullen*, the parol testimony coupled with the provision of the wills, both being consistent with the theory that the wills were executed pursuant to an agreement, was held sufficient to support the jury's verdict of contractual wills; the parol testimony in *Pullen* was no more compelling than in the instant cause.

In *Todd v. Cartwright*, 684 S.W.2d 154 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.), the court of appeals held that the provisions of the wills themselves clearly indicated the terms of the contract essential to recovery. The wills were almost identical, employed a deliberate identity of wording, were prepared by the same lawyer at nearly the same time, and conformed to the theory of an agreement in that they provided for equal distribution on both sides of the family. The court stated:

> We think that these facts afford proof beyond a scintilla that the testators executed the wills pursuant to an agreement. To hold otherwise would require us to make the unlikely assertion that the similarity of the wills, their simultaneous execution, the exact equality in the distribution of the testators' property, and the change in the manner by which the sons would inherit, happened by accident and signify no clearly defined purpose. We believe instead that given these will provisions and the circumstances of their execution, it is at least doubtful whether wills like these could have been made without agreement that they should be so made.

*Id.* 684 S.W.2d at 157.

Only wills executed on or after September 1, 1979, must expressly recite that a contract exists. *Wiemers v. Wiemers* 683 S.W.2d 355 (Tex.1984); Tex.Prob.Code Ann. sec. 59A (Vernon Supp.1986).

Whether Louise's and Hoffmann's wills were executed pursuant to a contract is a fact question on which appellees had the burden of proof. The burden of proof is on the party asserting that there was a contract for wills, and proof must be by clear and convincing evidence. *Magids*, 473 S.W.2d at 467.

Factual insufficiency of the evidence to support an affirmative answer to a special issue furnishes no basis for refusal to submit the issue. The trial court may decline to submit a relevant issue only if there is no evidence to support it. *Kindred v. Con/Chem Inc.*, 650 S.W.2d 61 (Tex.1983).

There was some evidence to support the submission of the refused special issue concerning contractual wills. That evidence includes the wills executed in 1975 by Louise and Hoffmann, and the statement made by Hoffmann but erroneously excluded by the trial court, as well as Louise's 1980 will, which uses the term "life estate," and is, itself, some evidence of her understanding that the 1975 wills were contractual. The issue should have been submitted. Appellees second cross-point of error is sustained.

The judgment of the trial court is reversed and this cause is remanded to the trial court for a new trial.